Richard A. CLARK et al., Plaintiffs-Appellants,

v.

H. R. WATCHIE et al., Defendants-Appellees.

No. 74–1382.

United States Court of Appeals, Ninth Circuit.

April 2, 1975.

Joseph C. McKinnon (argued), Seattle, Wash., for plaintiffs-appellants.

William Wesselhoeft (argued), and Payton Smith, Seattle, Wash., for defendants-appellees.

## OPINION

Before CHAMBERS and WRIGHT, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

This appeal is from a summary judgment in favor of Defendants-Appellees. The district court held that the doctrines of res judicata and collateral estoppel preclude a 10b–5 suit subsequent to a state court judgment in a partnership accounting suit. The Court also denied class status to Plaintiffs-Appellants. We reverse the first determination and affirm the second.

H. R. Watchie was President of H. R. Watchie & Associates. In 1961, Watchie formed a large land syndicate limited partnership known as Cougar Mountain Associates. H. R. Watchie was the general partner of Cougar Mountain Associates and H. R. Watchie & Associates was its management corporation and real estate broker.

Limited partnership units were to be sold to the public. The partnership agreement provided for six hundred limited partnership units. Each limited partner was to contribute $20,000 for each unit; $5,000 down and yearly assessments of $1,750 up to the total as required. Prospective purchasers were invited to clubs and restaurants to hear a sales talk by H. R. Watchie. After Watchie's presentation, commissioned salesmen met with the prospective purchasers to show them property which the partnership planned to buy and to persuade them to purchase partnership units. Each of the appellants purchased one or more units.

Cougar Mountain Associates ultimately purchased or entered into contracts to purchase sixty-six parcels of property. Watchie had an ownership interest in forty-three of those parcels. Some of the parcels of property purchased by the partnership were purchased from Watchie's brokerage customers.

In 1967, because of its precarious financial condition, the partnership was forced to pledge all its assets to borrow money at high interest rates. CMA Corporation was organized to replace Watchie as general partner of Cougar Mountain Associates. The new general partner terminated the management contract of H. R. Watchie & Associates.

On October 29, 1968, two suits—one in state court, the other in federal court—were instituted against H. R. Watchie. The state complaint alleged that Watchie breached his fiduciary duty to the partnership by mismanaging the partnership affairs from 1961 to 1967. The federal complaint alleged a violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5; 17 C.F.R. § 240–10b–5.[1] The federal complaint alleged that Appellees, acting individually and in conspiracy, made material misrepresentations and omissions in

---

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

1. Rule 10b–5, 17 C.F.R. § 240, 10b–5, provides in part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce * * *

"(b) To make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made * * * not misleading * * * in connection with the purchase or sale of any security."

connection with the sale of the partnership units in 1961 and 1962. Lynn, McCambridge and Gustaveson were added as defendants in the federal suit only in July, 1969.[2]

The Court found that Watchie had acted in good faith but had failed to obtain appraisals on several properties as required by the partnership agreement. Judgment was entered against him for $515,880.44, the excess of the purchase price of these properties over their fair market value.

On November 26, 1971, relying on a report of the special master, the district court denied Appellants' motion for a determination that the suit be certified as a class action. An appeal of that decision was withdrawn by Appellants.

On October 25, 1973, following the special master's report, the district court granted Appellees' motion for summary judgment. The master had concluded that since the issues in the state and federal cases were similar, the findings of the state court estopped the Appellants from further pursuing their federal claim.

## THE RES JUDICATA/COLLATERAL ESTOPPEL EFFECT OF THE STATE JUDGMENT ON THE 10b–5 SUIT.

■ We must first deal with res judicata. It is only when the prior judgment does not fit into that doctrine that it is necessary to inquire into the collateral estoppel effect of the judgment. Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 421 F.2d 1313, 1316 (5th Cir. 1970).

■ The doctrine of res judicata will apply to preclude a second suit only if the causes of action in the two suits are identical.[3] The Securities Exchange Act of 1934, 15 U.S.C. § 78aa, gives ex-

clusive jurisdiction to the federal courts to consider Rule 10b–5 claims.[4] In Abramson v. Penwood Inv. Corp., 392 F.2d 759, 762 (2nd Cir. 1969), the Court said that a Rule 10b–5 claim "is a different cause of action from the claim for breach of fiduciary duty, and is one which is cognizable only in federal courts." Res judicata cannot be applied to foreclose the federal claim in this case.

■ Lynn and McCambridge were not parties in the state suit. We must, therefore, preliminarily consider whether they have standing to assert the defense of collateral estoppel. Under traditional collateral estoppel theory, the doctrine of mutuality of estoppel required that the party asserting the defense must have been a party to the earlier litigation. In Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 313, 320–328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court criticized and rejected the doctrine of mutuality of estoppel. Thus, Lynn and McCambridge may assert the defense.

Appellants should not, however, be collaterally estopped from asserting their 10b–5 claim against those Appellees. The master's report was premised on the notion that the 10b–5 claim was based solely on a conspiracy theory. The master reasoned, and Appellees similarly contend, that a conspiracy could not have existed given the finding of Watchie's good faith by the state court. However, even if the finding of Watchie's good faith would foreclose the determination of Watchie's involvement in a conspiracy, Lynn and McCambridge could be found to have conspired together to sell securities in violation of Rule 10b–5. Moreover, since the amended 10b–5 complaint points to the acts of Appellees as individuals as well as conspirators, the finding of Watchie's good

---

2. Defendant Gustaveson's motion to dismiss was granted prior to the order granting summary judgment in favor of Watchie, Lynn, and McCambridge.

3. See 1B Moore's Federal Practice, ¶ 0.441(2) at 3777 (2nd Edition 1974).

4. The Securities Exchange Act of 1934, 15 U.S.C. § 78aa, provides:

"The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder * * *."

faith does not preclude the finding of individual security violations on the part of Lynn and McCambridge.

■ Watchie was named as a defendant in both suits. Collateral estoppel will preclude relitigation of those matters or issues that were litigated and were necessary to the state court judgment.[5] A three-part test to determine the applicability of the doctrine was discussed by the Court in *Blonder-Tongue Laboratories, supra*, at 323–24, 91 S.Ct. 1434. Appellants here are not collaterally estopped from bringing the 10b–5 suit unless each of the following questions is answered affirmatively: Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? Was the issue decided in the prior adjudication identical with the one presented in the action in question?

The first question presents little problem within the context of this case. The state court judgment was clearly a final judgment on the merits.

The second question is also to be answered affirmatively. The parties against whom collateral estoppel is asserted were parties in the state suit.[6] The state suit was filed as a class action under Washington State C.R. 23(b)(1).[7] The federal suit was filed under 23(b)(3) of the Federal Rules of Civil Procedure.[8] Appellants contend that the plaintiffs in the two actions are not the same because notice was not given to absent class members in the state suit and, consequently, those absent class members cannot be bound by judgment. That contention is without merit.[9] In effect, plaintiffs in the two actions are the same class namely, that class of limited partners of Cougar Mountain Associates.[10]

Determination of the third question involves inquiry into whether the factual issues in the two suits and the standards applied in each are identical. See Peterson v. Clark Leasing Corp., 451 F.2d 1291, 1292 (9th Cir. 1971).

■ The factual issues in the two suits are not identical. The state suit asked for a partnership accounting and damages. The state complaint alleged that Watchie mismanaged the partnership from 1961 through 1967. Each allegation related to the buying, selling or appraising of real property. The answer and counterclaim were also confined to the management of the partnership. The state court held that Watchie made mistakes of judgment but that he did not breach his fiduciary duty to the partnership. The state suit, then, resolved issues of non-disclosure with respect to the operation of the partnership itself from 1961 to 1967.

The federal complaint alleges that Appellees, by concealing material facts, violated and conspired to violate Rule 10b–5

5. 1B Moore's Federal Practice, ¶ 0.441(2), at 3777.

6. It is insignificant that CMA Corporation was a plaintiff in the state suit and not in the federal suit. For collateral estoppel purposes, it is important only that all the plaintiffs in the federal suit had the opportunity to litigate the state claim.

7. Washington State C.R. 23(b)(1) is identical to Rule 23(b)(1), Federal Rules of Civil Procedure.

8. Appellants originally contended that class status could be granted in the federal suit under 23(b)(1), Federal Rules of Civil Procedure. Appellants have subsequently conceded that 23(b)(3), Federal Rules of Civil Procedure is the only appropriate class action provision for a 10b–5 suit. Cf. LaMar v. H & B Novelty &

Loan Co., 489 F.2d 461, 466–467 (9th Cir. 1973).

9. See 3B Moore's Federal Practice, ¶ 23.55 at 1152:
"There will be situations where the class is cohesive, or where the legal relationship of the members enables one or more to stand in judgment for all and where the representatives are truly representative—a most important factor. In these * * * situations we suggest that, although some notice to the members may be desirable and may be given * * * a judgment should be res judicata to all the class, even in the absence of notice, in the (b)(1) and (b)(2) situations where the requirements of Rule 23 have been satisfied."

10. Except of course those limited partners named as defendants in the action.

in the sale of limited partnership units in 1961 and 1962. In Watson v. Roberts, Scott and Company, Inc., 466 F.2d 1348 (9th Cir. 1972), we held that in cases in which the state court did not decide issues of fact or law that would be dispositive of a federal action, the state judgment could not collaterally estop litigation of a subsequent federal suit. Here, neither complaint nor answer referred to federal securities law. Only one finding of fact in the state judgment mentions the selling of partnership units.[11] That finding stands alone and lacks relevant substance. It is therefore unnecessary to the state judgment. See Fibreboard Paper Products Corp. v. East Bay Union of Machinists Local # 1304, 344 F.2d 300, 306 (9th Cir.), cert. denied 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71 (1965), wherein we said that "where estoppel by judgment is asserted, the earlier determination must have been of a question of fact essential to the earlier judgment."

■ Not only were the factual settings in the two suits different, but different legal standards are to be applied to assess liability in each suit. We considered the legal standard applicable to a 10b–5 claim in White v. Abrams, 495 F.2d 724, 734 (9th Cir. 1974). There we said that "we reject scienter or any other state of mind as a necessary and separate element of a 10b–5 action." Under the *Abrams* standard, liability can be based on negligence, either with respect to the facts involved or the disclosure required.

In the state suit, the Court found no breach of fiduciary duty on the part of Watchie since all his mistakes were honest. Watchie's mistakes in judgment could have been negligent but since they were honest, he was absolved of the alleged breach of fiduciary duty.[12]

The federal test, as set out by this Circuit, holds a defendant to a higher standard of accountability than the Washington standard for breach of fiduciary duty.

## MAINTENANCE OF A 10b–5 SUIT AS A CLASS ACTION.

Before permitting a suit filed under Rule 23(b)(3) of the Federal Rules of Civil Procedure to be maintained as a class action, the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The Court must also find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The district court adopted the special master's report without extensive comment. The report stated that none of the Appellees made written representations to the purchasers of limited partnership units. The master reasoned that since the alleged omissions and misrepresentations were oral, separate determinations would have to be made of what was disclosed to each limited partner. He concluded that questions of law or fact common to the members of the class do not predominate over questions affecting only individual members.

Appellants contend that we should hold that common questions predominate. They reason that it is important that the presentations of some salesmen may have differed from others only if the element of reliance is a prerequisite to ultimate liability. In support of their contention that reliance is not an element in a 10b–5 suit, Appellants cite Af-

11. Finding of Fact No. 70 states:

"When he had engaged in selling the units of limited partnership during 1961 and 1962, defendant H. R. Watchie had represented that he had special experience * * * with respect to the buying, selling and development of raw land."

12. Subsequent to the state judgment, the Supreme Court of Washington posited the standard to be applied when analyzing an alleged breach of fiduciary duty. In Bassan v. Investment Exchange Corp., 83 Wash.2d 922, 524 P.2d 233 (1974), the court apparently rejected a state of mind standard in determining whether one has breached his fiduciary duty. Thus, the Washington standard for breach of fiduciary duty is now more similar to this Circuit's 10b–5 standard. Nevertheless, when collateral estoppel is the issue, it is the standard applicable at the time of the earlier decision which is significant.

filiated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). There the Supreme Court said that "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of the decision."

■ In so arguing, Appellants misconceive the issue. Although they might not have to establish reliance to ultimately succeed in the suit, Appellants must show, as a condition to class status, that any misrepresentations or non-disclosures were common to the class.[13] They have not done so for they have not shown that the alleged misrepresentations and non-disclosures involved every limited partner.[14]

■ In Price v. Lucky Stores, Inc., 501 F.2d 1177 (9th Cir. 1974), we said:

"A class action determination under Fed.R.Civ.P. 23 is one of a trial court's considered discretion. (Citations omitted.) * * * This is so because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Such a determination by the court will not be disturbed on appeal unless the party challenging it can show an abuse of discretion." 501 F.2d at 1179.

Other circuits have similarly deferred to the judgment of a district court in determining whether a suit should be maintained as a class action. See City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295 (2nd Cir. 1968); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973); Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Hackett v. General Host Corp., 455 F.2d 618 (3rd Cir. 1972).

If the trial judge has made findings as to the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion. *Price, supra,* 501 F.2d at 1179; *City of New York, supra,* at 298; *Wilcox, supra,* 474 F.2d at 345. Here, the special master analyzed the provisions of Rule 23(b)(3) and determined that the common questions of law and fact did not predominate over the individual questions. We hold that this analysis, which was adopted in full by the trial court, meets the test set out in *Price, supra.*

Accordingly, we hold that the trial court did not abuse its discretion when it made a class action determination against Appellants.

The judgment of the district court is vacated and the case is remanded for consideration consistent with this Opinion.

---

13. In this connection, the Second Circuit case, Herbst v. International Telephone and Telegraph Corp., 495 F.2d 1308 (2nd Cir. 1974), is inapposite. The Court held that since individual reliance was not an element, the district court did not err in holding that common issues of law and fact were predominant. In *Herbst,* the alleged misrepresentations were issued through a written prospectus. In certifying the suit as a class action, the district judge could have assumed that all class members received the standardized prospectus. A similar assumption cannot be made in this case. Furthermore, other courts have held that oral misrepresentations lead to individual questions because they are not standardized in the same sense as misrepresentations appearing in a prospectus or financial statement. See Moscarelli v. Stamm, 288 F.Supp. 453, 462 (E.D.N.Y.1968); Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 882 (5th Cir. 1973).

14. Appellants have the burden of showing that common questions predominate. Cf. Poindexter v. Teubert, 462 F.2d 1096, 1097 (4th Cir. 1972).