William H. THURBER,
Plaintiff-Appellant,

v.

The WESTERN CONFERENCE OF
TEAMSTERS PENSION PLAN et
al., Defendants-Appellees.

No. 75–2459.

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1976.

Thomas H. S. Brucker (argued), of Durning & Smith, Seattle, Wash., for plaintiff-appellant.

Noble K. Gregory (argued), of San Francisco, Cal., for defendants-appellees.

Before HUFSTEDLER and KENNEDY, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

This is an appeal from a summary judgment dismissing appellant's claim for "early retirement" pension benefits under an employer-employee pension plan established pursuant to § 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186. We affirm.

Appellant, William H. Thurber, age 64, is a former employee of Snow Peak Dairy, Inc. Appellees are a pension plan and its trustees. Under the terms of bargaining agreements between General Teamsters Local Union 324, of which Thurber was a member, and the Fluid Milk Operators, to which Snow Peak was a signatory, Snow Peak was obligated to make specified contributions to a trust fund on behalf of its employees performing work under the agreements.

Thurber was employed by Snow Peak as a driver-salesman and ice cream maker from January 1, 1952 to February 28, 1974. For the period of May 31, 1959 to October 1, 1962, however, he worked only part time and let his teamster membership lapse.[1] As a result, he was not covered by the bargaining agreement and Snow Peak made no contributions to the pension fund on his behalf during that period. Thurber re-

joined the Union on October 1, 1962, and Snow Peak resumed the payments to the pension fund.

On August 15, 1973, Thurber inquired of Robert Thompson, an employee of the firm retained to administer the Pension Fund, as to his eligibility for early retirement.[2] Thompson advised Thurber that he had suffered a break in service for the period from May 31, 1959 to October 1, 1962, but the break could be "healed" if Thurber could show that he worked more than 600 covered hours during the break period and supplemental employer contributions were made for that period.

Thurber estimated that he had spent 1272 hours making ice cream during the break period. On September 5, 1973, he sent a check for $127.70, which he had co-signed in his capacity as secretary-treasurer of the Snow Peak cooperative, to Thompson as the "Teamster Pension contribution" for the purpose of "healing the break in my Teamster Pension contribution".

In a meeting on September 26, 1973, Thurber told Thompson that if he was eligible for retirement he intended to sell his cooperative interest in Snow Peak, which also represented his right to employment. Thompson advised Thurber that he thought the break had been "healed" and that everything appeared to be in order. Thurber applied for early retirement at that meeting.

On October 30, Thurber sold his stock in Snow Peak. On November 8, the administrator cashed the check for the contribution to cover the break in service. On November 12, Thurber wrote Thompson that the stock had been sold.

On February 7, 1974, Thurber received a letter from another employee of the administrator informing him that he was not eligible for early retirement. Although Thur-

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. During that period Thurber had "another business opportunity" and "decided to make a change" to "another job".

2. Fifteen years of "unbroken service" and 3,000 "covered hours" of work were required for early retirement (at age 55) under the Pension Plan.

ber is still eligible for regular retirement at age 65, the sale of the stock left him unemployed.[3] This suit followed.

In the district court appellant offered two theories to support his claim: (1) the supplemental contribution healed any break in union employment, and (2) the Pension Plan is estopped to deny his eligibility for the pension because of the representations of Thompson and others, upon which Thurber relied. While not abandoning the first theory, on this appeal appellant argues only the second theory.

In granting the defendant's motion for summary judgment and dismissing the action, the district court held that (1) it would be illegal for the Pension Fund to receive retroactive contributions from Snow Peak and (2) likewise illegal to pay benefits to an employee based upon the illegal contribution; and (3) that the "doctrine of estoppel cannot be invoked to compel defendants to do an illegal act".

 Appellant argues first that estoppel is governed by state law. It is clear, however, that the action arises under a federal statute, i.e., § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Where federal statutes determine rights and liabilities, the federal common law, rather than state law, is controlling with respect to whether the defense of estoppel is available. *Sola Electric Co. v. Jefferson Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942).

Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, pursuant to which the pension fund was established, provides in pertinent part:

"(a) It shall be unlawful for any employer or association of employers * * to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce;

* * * * * *

"(c) The provisions of this section shall not be applicable * * * (5) without respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * *: Provided, That * * * (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer * * *."

Federal regulation of employee benefit trusts under § 302(c)(5)(B) was premised on the purpose of insuring that the trust funds were not tampered with or used for illicit purposes. See *Alvares v. Erickson,* 514 F.2d 156, 164 (9 Cir. 1975). In accord with this purpose the Second Circuit, in a well considered opinion, held that "*any* payment made by an employer to an employee representative, and this includes trustees administering a pension trust fund . . . and the receipt of such payments by an employee representative are absolutely forbidden unless there is a written agreement between the employer and the union specifying the basis upon which the payments are made. . . . The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties." *Moglia v. Geoghegan,* 403 F.2d 110, 116 (2 Cir. 1968), *cert. denied* 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969).

Moglia had been a member of a local union, and his employer had made regular contributions on his behalf to the union's pension fund. The claim of Moglia's widow was rejected because the employer had never signed a collective bargaining or pension trust agreement with the union. In rejecting the claim the court noted that, "Only employees and former employees of employers who are lawfully contributing to a union pension trust fund may qualify as

---

**3.** The regular retirement benefit will also probably be less than the benefit claimed here.

beneficiaries of a Section 302 trust".[4] 403 F.2d at 116.

The claimant in *Moglia* also urged equitable estoppel as a basis for allowing pension benefits, arguing that the trustees having accepted the employer's contributions on Moglia's behalf for 12 years were estopped from denying pension benefits to Moglia's widow. In rejecting this contention the court said in part:

"The statutory requirement of a written agreement is not a minor technicality which may be dispensed with when, there being no written agreement, the acts of one party may be said to estop him from defending on that ground. A written agreement is necessary before payments may be made under the section. As compelling and as appealing as appellant's case is, the structure of the section and the Congressional intent underlying the section preclude any judicial inroads into its rigid, specific requirements." 403 F.2d at 117.

 In the instant case there was of course a written agreement. It did not, however, contain any provision authorizing the employer to make contributions for the purpose of "curing" or "healing" breaks in service. We agree with the district court that it was illegal for the Pension Fund to receive the retroactive contribution in an attempt to heal the break in service. It would likewise be illegal for the Fund to pay benefits to Thurber based upon the illegal retroactive contribution. The diversion of contributions made on behalf of covered employees outside the terms of the trust would contravene § 302's requirement that contributions to a trust fund must be made "for the sole and exclusive benefit of the employees of [the] employer, and their families and dependents".

The fact that Thurber relied on representations of an employee of the firm

retained to administer the trust fund would not estop the Pension Fund and its trustees from denying Thurber's eligibility for the pension. The rights of other pensioners must be considered, and the trust fund may not be deflated because of the misrepresentation or misconduct of the Administrator of the fund. We agree with the district court that the doctrine of estoppel may not be invoked to compel an illegal act.[5]

Affirmed.

---

4. The court recognized that its "construction of Section 302 may work a hardship in the instant case" and noted that its holding did "not preclude appellant from pursuing any other remedies that may be available to her." The same is true here.

5. As noted supra, this holding would not preclude Thurber from pursuing any other remedy which might be available to him.