**Jorden HODGINS, Plaintiff-Appellee,**

v.

**CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant-Appellant.**

**No. 77-1617.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1979.

Decided June 24, 1980.

Rehearing and Rehearing En Banc Denied Sept. 17, 1980.

Nathaniel R. Jones, Circuit Judge, concurred with opinion.

Alan M. Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., Ted J. Cwiek, Hoffa, Chodak & Robiner, James P. Hoffa, Detroit, Mich., for defendant-appellant.

Gerald L. Weiss, Southfield, Mich., Arthur J. Tarnow, Detroit, Mich., for plaintiff-appellee.

Before MERRITT, MARTIN and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case concerns the eligibility of plaintiff-appellee Hodgins to receive pension

benefits from defendant-appellant Central States Southeast and Southwest Areas Pension Fund. (The Fund). After the Trustees of the Fund denied his application for benefits, Hodgins filed suit in district court. The district court awarded him $188.66 per month for life, retroactive to January 1, 1976, plus statutory interest to date of judgment. The Fund appeals.

Eligibility for pension benefits is contingent upon twenty years of continuous service in a Teamsters Union industry. This service must be in the capacity of an "employee," as distinguished from a "supervisor." The concept of "continuous service" is subject to the "break in service" rule. A "break in service" occurs if an employee is not in covered employment for a period of five consecutive years between February 1, 1955 and April 1, 1969. In the event of a break in service, the employee received continuous service credit only for the period of re-employment following the break. (Pension Plan, Article I, §§ 13, 14).

John F. Ivory Company (the company) employed Hodgins in 1938 as a van helper, assigned to duty unloading moving vans. He became a member of the Teamsters Union at that time. After serving in the Armed Forces, Hodgins worked for the company as a van driver and warehouseman. Over the years, Hodgins gradually assumed increased responsibility; he began handling lease agreements with contract truckers and making vehicle inspections for the company. At the same time, however, he continued driving a van and working in the warehouse.

In 1960, the company initiated a pension plan for its management personnel. The program was offered only to Hodgins and fourteen other key people. Hodgins enrolled in the plan, but continued to pay union dues as in the past. The company continued to pay him at the usual hourly rate for drivers and made the customary payments to the Fund on his behalf.

In 1963, Hodgins left the company and went to work in a similar capacity for Three Ivory Brothers Company, a non-affiliated concern. His former employer was aware of his new job and knew where to contact him if necessary.

Meanwhile, in 1969, the local union and the company agreed that the status of several company employees, including former employee Hodgins, should be reclassified as "supervisory." The company informed the union that Hodgins had enjoyed supervisory status since 1952. The union, in turn, notified the Fund that Hodgins and certain others had ceased to be "employees" many years before. As a result of this change, the company later secured a refund of payments made to the Fund on behalf of the reclassified workers; the company retained this refund.

All the affected employees except Hodgins, who was no longer working for the company, were contacted about the matter. They were given the option of limiting their work to duties consistent with "employee" status. The affected personnel were told that if they elected this option, no "break in service" for pension purposes would be attributed to them and they would remain eligible for full benefits. Failure to return to "employee" classification would, of course, result in a "break in service" and consequent loss of benefits. No one ever notified Hodgins about this change. He was unaware of his reclassification and the resulting retroactive application of the break in service rule against him until 1971, when the Trustees rejected his application for benefits.

The district court held that the Trustees' denial of Hodgins' application for benefits was "arbitrary and capricious." Hodgins had no notice, actual or legal, that he had been a "supervisor" for many years and was therefore ineligible for pension benefits. He had no opportunity to make alternative financial plans for retirement.

Although Hodgins' whereabouts were known at the time of the reclassifications, no effort was made to apprise him of his changed status. Unlike the other reclassified personnel, he was given no option to retain his pension benefits by returning to employee status.

Finally, the trustees' decision is inherently inconsistent. *Reiherzer v. Shannon,* 581 F.2d 1266, 1273 (7th Cir. 1978). In *Reiherzer* the trustees stated that for purposes of the "continuous service in the industry" eligibility requirement, Reiherzer was self-employed from 1959 to 1968. The Seventh Circuit found the trustees' decision was inherently inconsistent because nothing occurred in 1959 in Reiherzer's employment to justify reclassifying him "self-employed" and thus ineligible. Similarly, because Hodgins continued to pay union dues, receive his usual hourly pay as a driver and the company continued to contribute to the Fund on his behalf, his status was not obviously altered.

For the foregoing reasons, the decision of the district court is affirmed.

NATHANIEL R. JONES, Circuit Judge, concurring.

Because, in my opinion, *Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir. 1978), incorrectly interpreted the provisions of the Central States, Southeast and Southwest Areas Pension Plan with respect to the eligibility of supervisors, I cannot join in the reasoning of the majority opinion. I concur in the result on the basis that the Fund is estopped from denying the eligibility of Hodgins to receive pension benefits.

I.

The majority relies exclusively on *Reiherzer v. Shannon* to justify the award of benefits. *Reiherzer* is concerned with the

Fund's ruling that a self-employed contributor was ineligible for benefits. Its discussion of this issue is plainly inapplicable to our case. The Fund argued in the alternative that Reiherzer should be denied benefits as being a supervisor. The Seventh Circuit distorted the language of the Pension Plan to award benefits to Reiherzer. Article I, Section 7 of the Plan defines an "employee" to be "a person other than a person employed in a supervisory capacity . . . ." App. 69. The Plan states eligibility for benefits always in terms of "an employee." *E. g.,* Article I, §§ 11, 14, 15; Article II, §§ 1, 2. App. 69–70. In short, a person must be an "employee" as defined by Article I, Section 7 to be eligible for benefits according to the terms of the Plan.

The district court found that Hodgins was in fact a supervisor, as defined by the Plan and 29 U.S.C. § 152(11). This finding is not clearly erroneous. Therefore, I would hold that the Trustees did not act arbitrarily or capriciously in deciding that Hodgins is not eligible for benefits under the literal terms of the Plan. *Wilson v. Board of Trustees,* 564 F.2d 1299 (9th Cir. 1977).

II.

The district court held that the Trustees "acted in an arbitrary and capricious manner in retroactively applying the break-in-service rule to [Hodgins] without giving him notice and the same opportunity to change job classifications as was given to the other individuals similarly affected." App. 85–6.[1] The Fund argues convincingly

1. Hodgins and the district court relied primarily on *Burroughs v. Board of Trustees,* 542 F.2d 1128 (9th Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). In *Burroughs,* the break-in-service rule was changed and applied retroactively to deny pension benefits to plaintiff. The plaintiff had not received notice of the change in the rules for qualification for pension benefits. Holding that "how the changes in qualifications were made" was arbitrary and capricious, the Ninth Circuit stated that it was "fundamentally unfair for the Trustees to apply the break-in-employment rule to employees such as [plaintiff] who had no notice of its existence and hence no reasonable opportunity to protect themselves from its im-

pact during the years to which it was retroactively applied." *Id.* at 1131.

*Burroughs* is distinguishable from our case. In our case, the rules remained unchanged and were available to the employees. Instead, the union and employer determined that Hodgins was a "supervisor," not an "employee," and hence ineligible under the pension rules. The Eighth Circuit applied this distinction in *Castello v. Gamache,* 593 F.2d 358 (8th Cir. 1979) (per curiam), to deny the plaintiff recovery as beneficiary under a group insurance plan issued in connection with a union pension fund, where the insured had not been notified that her layoff terminated the group insurance and that she had the right to convert to individual insurance coverage. The Eighth Circuit reasoned

that it cannot be held responsible for the actions or representations of the local union or employer. *Knoll v. Phoenix Steel Corp.*, 465 F.2d 1128 (3d Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973). The Plan states explicitly that no person can act as an agent of the Fund without the express authorization of the Trustees, Article II, § 10, and that the Trustees alone have authority to interpret the Plan's provisions and to determine eligibility. App. 68. Also, there is no finding that the Fund knew of, or had reason to know of, the employer's actions and representations. Therefore, the district court's reasoning cannot be adopted.[2]

### III.

I would hold that the Fund's continued acceptance of contributions on behalf of Hodgins, after it was notified by the local union and employer that Hodgins was a supervisor and ineligible for benefits, estops the Fund from alleging Hodgins's ineligibility.[3]

To establish an estoppel against the Fund for its silence in accepting the contributions and its inaction in notifying Hodgins of his ineligibility, Hodgins must prove: 1) his ignorance of his reclassification by the local union and employer and his ignorance and lack of reason to know of his supervisory status; 2) silence or inaction by the Fund on his reclassification; 3) a duty on the part of the Fund to notify him of the reclassification; 4) the Fund's intentional or negligent concealment or misrepresentation of his true status; 5) actual reliance by him on the Fund's concealment or misrepresentation; and 6) an injury if the estoppel is denied. *Talarico v. United Furniture Workers Pension Fund A*, 479 F.Supp. 1072, 1083 (D.Neb.1979); *Dorward v. ILWU–*

*PMA Pension Plan*, 75 Wash.2d 478, 452 P.2d 258 (1969). *See also* 28 Am.Jur.2d *Estoppel and Waiver* § 53 (1966). Hodgins has met his burden of proof on each of these elements.

The record establishes that Hodgins did not know about the agreement by the local union and John F. Ivory Company to reclassify him as a supervisor. Hodgins had left this company six years before this agreement was reached and the notice of it was sent to the Fund. The company did not notify Hodgins of the reclassification. Furthermore, Hodgins did not have reason to suspect that he would be determined ineligible for benefits. The district court was not clearly erroneous in finding that Hodgins had no reason to know that he was a supervisor. His participation in the company's pension plan is not inconsistent with his view that he was an "employee," not a "supervisor." App. 126, 145. The inconsistency, if any, lay in the minds of the company officials who invited him to participate in the company pension plan. App. 185. Furthermore, the record indicates that Hodgins was paid an hourly rate similar to the rate set by the collective bargaining contract, App. 114, 193–94, that he paid his union dues during the relevant time period, App. 120–21, and that his employers paid contributions on his behalf until at least 1973. App. 115, 119.

The Fund silently continued to accept contributions on behalf of Hodgins after it had received notice of his ineligibility. At no time did the Fund notify Hodgins of the reclassification causing his ineligibility.

The Fund has a duty to notify a person of a reclassification which causes ineligibility for benefits. *See Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir. 1976). The duty is

---

that the insurance policy rules were generally available, and that, absent explicit language in the pension trust agreement, the trustees would not be held to have fiduciary duty to notify the laid-off employees of the conversion clause. Unlike *Castello*, the Fund knew of the change in Hodgin's status and accepted contributions for him after gaining that knowledge. Also, unlike the plaintiff in *Castello*, Hodgins never

knew of his change in status under the pension plan.

**2.** Hodgins did not sue the Trustees individually and stipulated to the dismissal of his claim against John F. Ivory Company. His reasons for doing so are not apparent.

**3.** The district court held to the contrary by Order of December 6, 1976. App. 22–25.

more aptly placed on the Fund, or its administrator, rather than the Trustees, since it is essentially a ministerial or administrative task which does not involve the discretion of the Trustees. The Trustees are entitled to rely on the certification by a local union or employer that a person is no longer an "employee." Plan, as amended, December 31, 1974, Article V, § 1. App. 63–64. However, the Trustees need not accept the conclusion of the local union or employer. Only the Trustees can render a final decision on eligibility. Nevertheless, the affected person should be notified immediately of the reclassification so that he or she may plan for the future accordingly or may attempt to cure any errors without a further delay which could magnify any harm. This duty does not seem overly burdensome, but instead seems required for fair administration of the Fund and for just treatment of the Fund's beneficiaries.

The Fund did not notify Hodgins of the reclassification and his potential ineligibility. This failure concealed in effect material facts from Hodgins. The breach of its duty provides the turpitude necessary to establish an estoppel, though, at the time, the Fund's practice was not to decide questions of eligibility until a person applied for benefits.

Hodgins relied on the Fund's concealment of the facts by continuing to work in the Teamsters industry as he always had done. Believing in his eligibility, he did not attempt to regain eligibility by changing his employment or duties on the job.[4] Hodgins has plainly been injured by the denial of pension benefits, despite receiving a company pension.

Therefore, I conclude that Hodgins has satisfied the elements of an estoppel, which prevents the Fund from denying his eligibility for pension benefits.

Prior decisions in other circuits have indicated a reluctance to apply estoppel princi-

ples in order to award pension benefits. *Reiherzer v. Shannon*, 581 F.2d at 1267 n. 1; *Phillips v. Kennedy, supra; Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir. 1976) (per curiam); *Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Four main reasons have been advanced: 1) such payments are proscribed by statute, 29 U.S.C. § 186(c)(5); 2) strict adherence to the written agreement is necessary to prevent corruption in the collective bargaining process; 3) the actuarial soundness of pension funds must be protected; and 4) an ineligible person should not be able to create eligibility by making improper contributions to the pension fund. The use of estoppel principles to award benefits to Hodgins does not violate these legitimate concerns.

The estoppel is not used to supply a missing ingredient, such as a written agreement, required by statute. *Compare Moglia v. Geoghegan, supra*. Rather, the estoppel only defines a fiduciary duty which the Fund owes to its beneficiaries in the administration of the written pension agreement. The plan delineates the amount of benefits to be paid. Furthermore, though Hodgins is not an "employee" as defined by the pension agreement, he is an "employee" within the meaning of 29 U.S.C. § 186(c)(5), which mandates that the pension fund be established and used for the "sole and exclusive benefit of the employees." *Reiherzer v. Shannon*, 581 F.2d at 1275–76. *See also Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d 1261, 1268 (9th Cir. 1979).

There is no danger of corruption or undue influence in the collective bargaining process, since the benefits are paid pursuant to a judicial order. The facts in this case also demonstrate the total absence of the possibility of corruption, for the union and employer agreed in effect to deny benefits to an alleged management employee. *Com-*

---

4. My reasoning is not based on the employer's representation that the break in service could be cured retroactively by a change in job duties. In fact, such a retroactive curing does not seem permissible according to the Plan.

*Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir. 1976) (per curiam). None of the seven reclassified employees has been awarded pension benefits by the Fund. App. 212.

pare *Freeman v. Central States, Southeast and Southwest Areas Pension Fund*, 86 Lab. Cas. (CCH) ¶ 11,422 (E.D.Mich., 1979).

Because benefits are awarded only to one person, the actuarial soundness of the Fund is not threatened, though the Fund refunded in 1970 the employer contributions made on behalf of Hodgins. Also, it appears that the Fund still has contributions made for Hodgins by another employer. These contributions continued until at least 1973.

Finally, all parties concede that Hodgins was eligible for benefits for at least fourteen years beginning in 1938. From 1952 until his retirement it was reasonable to believe that he was eligible. Thus, Hodgins is not a clearly ineligible person who is attempting to create eligibility by making contributions. Furthermore, the Fund did more than just receive and accept the contributions on Hodgins' behalf. It committed a breach of duty which it owed to Hodgins.

> I agree with the Ninth Circuit that:
> [T]here are in theory arguments for holding that judicially compelled payments by retirement pension funds in accordance with the provisions of a detailed written agreement, which would not significantly affect the actuarial soundness of the fund, to a person who would be a proper participant but for the Fund's determination of ineligibility, respond to the policy considerations underlying Section 302 [29 U.S.C. § 302].

*Aitken v. IP & GCU—Employer Retirement Fund*, 604 F.2d at 1268. *See also, Oates v. Teamsters Affiliates Pension Plan*, 482 F.Supp. 481, 486 (D.D.C.1979). Unlike the Ninth Circuit, this court is not bound by precedent and is able to reach the bottom line result favored in *Aitken*. Furthermore, "public policy dictates that complex, vague, and ill-defined administrative practices, governing the operation of pension plans which result in harm to the covered employees, be construed most strongly against the Trustees of the pension plan." *Dorward v. ILWU–PMA Pension Plan*, 452 P.2d at 264.

Therefore, I concur in the award of pension benefits to Hodgins.