GENERAL TEAMSTERS, AUTO TRUCK
DRIVERS AND HELPERS LOCAL
162, Plaintiff-Appellee,

v.

MITCHELL BROS. TRUCK
LINES, Defendant,

John D. Buchanan, Intervenor-Appellant.

GENERAL TEAMSTERS, AUTO TRUCK
DRIVERS AND HELPERS LOCAL
162, Plaintiff-Appellee,

v.

MITCHELL BROS. TRUCK LINES,
Defendant-Appellant,

John D. Buchanan, Intervenor.

Nos. 80-3247, 80-3258.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1981.

Decided May 17, 1982.

As Amended July 30, 1982.

Rehearing and Rehearing In Banc
Denied Oct. 15, 1982.

David W. Morthland, Miller, Anderson, Nash, Yerke, Wiener & Hager, Portland, Or., and William S. Waldo, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendant-appellant.

Herbert B. Galton, Galton, Popick & Scott, Portland, Or., for plaintiff-appellee.

Before KILKENNY and FLETCHER, Circuit Judges, and HATFIELD,* District Judge.

KILKENNY, Circuit Judge:

This is an appeal from a summary judgment confirming and enforcing the award of an arbitrator in a labor dispute.

### BACKGROUND

Appellant Mitchell Bros. Truck Lines (Mitchell) transports goods in intra and interstate commerce. A substantial part of its freight is carried by tractors leased from owner-operators. In addition to this leased equipment, Mitchell also maintains a fleet of tractors driven by employees of the company. Mitchell, therefore, utilizes two classes of workers. One, sometimes referred to as "A" employees, are the drivers of equipment owned by Mitchell. The other the so-called "B" employees, consists of individuals that own and operate their own trucking equipment. It is the status of these "B" employees that gave rise to the dispute in this case.

The appellee, General Teamsters, is the bargaining agent for Mitchell's employees. John D. Buchanan, the intervenor, is a lease-driver and, along with Mitchell, opposed the motion for summary judgment.

---

* The Honorable Paul G. Hatfield, United States District Judge for the District of Montana, sitting by designation.

In 1973, there was a five month strike. Mitchell operated during the strike by replacing all of its striking employees, including the owner-operators. The strike was settled in April, 1974, when Mitchell and the union entered into a settlement agreement which provided, among other things:

"None of the provisions of the collective bargaining agreement by and between Mitchell Bros. and the Union would be applicable to any of the independent contractors, with the sole exception that the independent contractors would be required to:

(a) Become and remain members of General Teamsters Local No. 162 within 120 days of the execution of the agreement between the parties, and all independent contractor drivers thereafter contracted with would become and remain members of the Union as a condition of their contract on and after the 31st day following the beginning of their contract; and

(b) Mitchell Bros. would withhold monies from the monthly settlements it made with all independent contractor drivers and remit these monies to the Teamsters Health and Welfare Plan and Pension Fund.

The aforementioned provisions of the strike settlement agreement were carried forward into subsequent collective bargaining agreements on November 1, 1976, and March 25, 1977. In May of 1977, a major portion of the stock in Mitchell changed hands. The new major stockholder decided to make some changes in its relations with its owner-operators. In July of 1977, it was announced that owner-operators would no longer be required to maintain memberships in the union. Furthermore, Mitchell would no longer withhold contributions for health and welfare and for pension benefits from the owner-operators.

Subsequently, the union filed a grievance and the matter was submitted to arbitration. The arbitrator ruled in favor of the union, finding that the "B" workers were employees of Mitchell and not independent contractors. The decision of the arbitrator was confirmed by the district court. We affirm.

## ISSUES

I. Did the district court have jurisdiction over the subject matter of this action?

II. Was the "common law agency test" applied in the record before us?

III. Would the arbitrator's decision, if enforced, be repugnant to the National Labor Relations Act?

(a) Would the arbitrator's decision validate what amounts to an unlawful "hot cargo" agreement or be in violation of 29 U.S.C. § 186(c)(5)?

(b) Does the award of the arbitrator constitute approval of an unfair labor practice in violation of 29 U.S.C. §§ 157 and 158?

IV. Should the doctrine of collateral estoppel be applied in favor of the appellants?

## I.

■ Appellants argue that under 29 U.S.C. § 185(a), the district court's jurisdiction is limited to suits for "violation of contracts" and that the word "contracts" was intended by Congress to be limited to "collective bargaining agreements." This argument is in direct conflict with the interpretation given by the Supreme Court to the word "contracts" under that section in *Retail Clerks v. Lion Dry Goods*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962). True enough, the Court there declined to decide whether a strike settlement agreement was a "collective bargaining agreement" but it did go on to hold that it was a "contract" for purposes of § 185(a). In placing a definition on the word "contract", the Court concluded that any agreement between the employer and the labor organization which was "significant to the maintenance of labor peace between them." was a "contract" within the meaning of this section. 369 U.S. at 28, 82 S.Ct. at 548.

Beyond question, the clause in dispute was a part of a strike settlement agreement between the employer and a labor organization. Certainly, this writing was intended

to at least buttress "the maintenance of labor peace."

The district court had subject matter jurisdiction.

## II.

■ Here, appellants argue that the Arbitrator based his critical decision on employee/independent contractor status upon an outdated legal standard. In fact, the Arbitrator does state as his standard the case of *NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), a case whose standard for determining employee status was overruled by amendment of the Wagner Act and by the case of *NLRB v. United Insurance Co.*, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968). The standard for employee classification adopted in the latter case was the "common-law agency test." 390 U.S. at 256, 88 S.Ct. at 989. Appellants insist that the Arbitrator had to use this common-law test, as illustrated by Restatement 2d of Agency, Sec. 220 (1957), and that his failure to do so requires this court to vacate the arbitration award as being in "manifest disregard of the law." *San Martine Compania De Nav. v. Saguenay Term., Ltd.*, 293 F.2d 796, 801 (C.A. 9 1961).

As part of their argument, appellants said that the Arbitrator should be bound by the common-law agency test, as illustrated by Restatement 2d of Agency, Sec. 220 (1957), since the Ninth Circuit has uniformly required this. Sec. 220 reads, in part, as follows:

"Sec. 220   Definition of a Servant

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is *subject to the other's control or right to control*.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, *among others*, are considered: ..." [Emphasis added]

The section then lists ten facts that may be considered in making the servant/non-servant determination.

On page 38 of the Arbitrator's decision, the following statement is made concerning the ultimate classification of the workers in question: "The degree of control which a Carrier has a right to exercise will determine the outcome." The remainder of his discussion is an analysis of the factors that go into determining the "degree of control." This analysis is entirely consistent with the "common-law agency test" and with Restatement 2d Agency, Sec. 220. The Arbitrator has, in fact, done exactly what the appellants claim he should have done. The Arbitrator did, *in fact*, use the "common-law agency test" in arriving at his decision.

Thus, the Arbitrator is guilty of nothing more than doing the right thing for the wrong reason. "In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *United States v. Washington*, 641 F.2d 1368, 1371 (C.A. 9 1981); *Thos. P. Gonzalez Corp. v. Consejo Nacional, Etc.*, 614 F.2d 1247, 1256 (C.A. 9 1980). We see no reason to depart from this rule in the present context. As the Supreme Court has stated:

"Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). [Footnote omitted]

Judicial review of arbitration awards is very limited. *Steelworkers Trilogy.*[1] Ap-

1. The *Steelworkers Trilogy: Steelworkers v.*     *American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343,

pellants' second argument does not give this court a reason to intervene and is rejected.

## III.

■ Appellants' first argument on this contention is that the "only legally permissible conclusion" that can be drawn from the facts in this case is that the owner/operators are independent contractors. Consequently, the enforcement of the Arbitrator's award would give effect to an unlawful "hot cargo" agreement. *Local 814, Teamsters v. NLRB*, 512 F.2d 564 (C.A.D.C. 1975); *A. Duie Pyle, Inc. v. NLRB*, 383 F.2d 772 (C.A. 3 1967), *cert. denied*, 390 U.S. 905, 88 S.Ct. 819, 19 L.Ed.2d 871 (1968). Obviously, this argument is part and parcel of the issue of whether the owner/operators are employees or independent contractors. If on the record they appear to be independent contractors, this contention would be meritorious.

To uphold the appellants' contentions, this court would be compelled to hold that the owner/operators were independent contractors as a matter of law. This would necessarily require us to make a redetermination of the merits of the grievance as submitted to arbitration. Such an action on our part would be impermissible judicial review under the authority of the *Steelworkers Trilogy, supra*.

■ As an alternative on this issue, appellants argue that the Arbitrator's award, insofar as it directs the employer to make payment into pension funds, violates 29 U.S.C. § 186(c)(5), as construed in *Thurber v. Western Conf. of Teamsters Pension Plan*, 542 F.2d 1106, 1109 (C.A. 9 1976). *Thurber* is not in point. Here, the payments ordered by the Arbitrator are simply those payments the employer would have had to make had he not ignored a portion of the collective bargaining agreement. *Thurber* involved "healing" payments into a pension fund which were not covered by the written agreement. Additionally, the record before us does not involve the policy considerations before the court in *Thurber, supra*, at 1108. *See also, Moglia v. Geoghegan*, 403 F.2d 110, 116 (C.A. 2 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Beyond question, the case before us involved a "written agreement with the employer" as that phrase is used in 29 U.S.C. § 186(c)(5)(B).

Appellants cite no authority in support of their contentions that enforcement of the award of the Arbitrator would result in this court's sanctioning a "pre-hire" agreement in violation of 29 U.S.C. §§ 157 and 158 and that the enforcement of the specific provision covering the owner/operators would constitute court approval of an unfair labor practice in violation of 29 U.S.C. § 158. We have found no authority which supports appellants' arguments on these points. A studied analysis of the provisions of §§ 157 and 158 convinces us that the appellants' claims are meritless. At best they seem to be figments of the imagination of resourceful counsel attempting to find a weakness in the decision of the lower court.

## IV.

Finally, appellants insist that the district court should have given collateral estoppel effect to the decision of the California Municipal Court in *Sirmons v. Mitchell Bros.*, No. 14400 (Sup.Ct., App.Div. San Joaquin County, Cal., 1979).

In *Sirmons*, the plaintiff, a truck driver for Mitchell, instituted an action in the California court for breach of contract claiming that the defendant had wrongfully withheld certain amounts of money from his agreed upon compensation for hauling goods as an independent contractor. The issue was whether or not Mitchell was entitled to withhold amounts which were paid to plaintiff's health and welfare fund and pension fund from the compensation otherwise payable to him. The court found that Sirmons was an independent contractor and not an employee and entered judgment against

4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enter-prise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Mitchell for the sums withheld and attorney fees. The Western Conference of Teamsters Pension Trust Fund was a cross-defendant and the court found against it on its contentions.

■ The doctrine of collateral estoppel precludes relitigation of matters or issues that have already been litigated and that were necessary to the judgment of the court. *Clark v. Watchie*, 513 F.2d 994, 998 (C.A. 9 1975). In *Clark*, this court set out a three-part test to determine the applicability of the doctrine: (1) was there a final judgment on the merits; (2) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication; and (3) was the issue decided in the prior adjudication identical with the one presented in the action in question? *Id.*

■ The litigation before the district court was for the *confirmation* of an arbitration award. It was not, nor could it have been, an action seeking to relitigate the merits of the underlying grievance. This is the essence of the limited review of arbitration awards dictated by the *Steelworkers Trilogy*. Furthermore, we find that there is not the requisite identity of issue in this case.

### THE DISSENT

■ Judge Fletcher's emphasis on the arbitrator's "interpretation of federal law" misperceives the nature of the underlying controversy. The dispute is basically contractual. It revolves around the alleged breach of a settlement agreement in which there is a disagreement over the exact status of Mitchell Bros. lease drivers (the "B" drivers). Mitchell Bros. claims that these drivers are independent contractors and, therefore, fall outside the agreement. The union maintains that they are employees and thus covered by the contract. It is undisputed that the parties submitted this dispute to arbitration. The arbitrator, after a hearing, found that the "B" drivers were, in fact, employees of Mitchell Bros. rather than independent contractors. Beyond question, this is a factual determination in that the arbitrator had to take into

consideration the entire background of the controversy, including the actions of the parties in carrying out the terms of the agreement and the control exercised by Mitchell over the "B" drivers. Although the standard, in fact, used by the arbitrator was set forth in *NLRB v. United Insurance Co.*, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), a federal case, we have difficulty characterizing his ultimate determination as an "interpretation of federal law."

The authorities cited by the minority are simply not in point. For example, *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737–738, 101 S.Ct. 1437, 1443–44, 67 L.Ed.2d 641 (1981), and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *Barrentine* involved the Fair Labor Standards Act, while *Alexander* involved Title VII of the Civil Rights Act of 1964. In relying on *Alexander*, the *Barrentine* Court said:

"These considerations were the basis for our decision in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (1974). In that case, petitioner, a black employee, had been discharged by respondent employer, allegedly for producing too many defective parts. Claiming that his discharge was racially motivated, petitioner asked his union to pursue the grievance and arbitration procedure set forth in the collective-bargaining agreement. The union did so, relying on the nondiscrimination clause in the collective-bargaining agreement, but the arbitrator found that petitioner had been discharged for just cause. Petitioner then brought an action under Title VII of the Civil Rights Act of 1964 in Federal District Court based on the same facts that were before the arbitrator. The District Court granted summary judgment for the employer, holding that petitioner was bound by the prior adverse arbitral decision. The Court of Appeals affirmed.

"This Court reversed, concluding that an employee's statutory right to a trial *de novo* under Title VII is not foreclosed by the prior submission of his discrimination

claim to final arbitration under a collective-bargaining agreement. *The Court found that in enacting Title VII, Congress had granted individual employees a non-waivable, public law right to equal employment opportunities that was separate and distinct from the rights created through the 'majoritarian processes' of collective bargaining. Id. at 51 [94 S.Ct. at 1021].* Moreover, because Congress had granted aggrieved employees access to the courts, and because contractual grievance and arbitration procedures provided an inadequate forum for enforcement of Title VII rights, the Courts concluded *that Title VII claims should be resolved by the courts de novo."* 450 U.S. at 737–738, 101 S.Ct. at 1443. [Emphasis added.]

The considerations referred to in *Barrentine* are that while courts should defer to the arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights "arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Barrentine*, at 737, 101 S.Ct. at 1443. Obviously, this litigation involves the interpretation and applicability of a settlement agreement to a certain class of Mitchell Bros. drivers. In no way does it truly involve an employee's claim based on rights "arising out of a statute to provide minimum substantive guarantees to individual workers." Because the case before us is neither a Fair Labor Standards claim, nor a Civil Rights action, neither *Alexander* nor *Barrentine* is in point. For that matter, as previously mentioned, this is a case based solely on the applicability of the Collective Bargaining Agreement, not upon a statute.

The contentions of the intervenor Buchanan are to all intents and purposes the same as those of Mitchell Bros. Our disposition of the latter fully answers Buchanan's claims.

The previous majority and concurring opinions as reported in *General Teamsters, etc. v. Mitchell Bros.*, 677 F.2d 727 (C.A. 9 1982), are withdrawn.

The judgment of the district court should be affirmed.

IT IS SO ORDERED.

FLETCHER, Circuit Judge, dissenting:

I dissent. The majority opinion makes two errors. It denies appellees review of the arbitrator's decision on questions of federal labor law, and it denies review of the arbitrator's decision to a person who may or may not have been a party to the arbitration.

*A. Questions of Federal Law*

The arbitrator decided that, under the collective bargaining agreement, certain individuals were "employees" for purposes of that agreement. Appellees here argue that enforcement of the arbitrator's decision would violate federal labor law, specifically 29 U.S.C. §§ 157, 158, and 186(c)(5). The resolution of this question involves a determination as to whether those individuals are "employees" *under federal labor law. See Joint Council of Teamsters, No. 42 v. Associated General Contractors*, 662 F.2d 531 (9th Cir. 1981), aff'g 520 F.Supp. 3, 4 (C.D.Cal.1981); *Local 814, International Brotherhood of Teamsters v. NLRB*, 512 F.2d 564, 566–67 (D.C.Cir.1975). The majority, however, accepts the findings of the arbitrator as dispositive on this issue.

This is error. The Supreme Court made clear in *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737–46, 101 S.Ct. 1437, 1443–48, 67 L.Ed.2d 641 (1981) that the decision of an arbitrator on issues of federal law is not binding on the courts where the federal statutory rights of employees are at stake. *See also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The district court in this case had an obligation to take evidence on and decide the issue of whether the individuals involved were "employees" under the federal statutes cited, and thus whether the arbitrator's decision was inconsistent with federal law. As the Supreme Court in *Barrentine* noted, the findings of the arbitrator may be accorded evidentiary weight as appropriate in a subsequent court

proceeding. *Id.* at 743 n. 22, 101 S.Ct. at 1446 n.22 (quoting *Gardner-Denver*, 415 U.S. at 60 n.21, 94 S.Ct. at 1025 n. 21). This is not the same as saying that the court can abdicate its responsibility to decide issues of federal law, as I believe the majority has done here. I would remand to the district court for further proceedings.

*B.  Claims of Intervenor*

John D. Buchanan was permitted to intervene as a matter of right in this proceeding to protect his interest as one of the independent contractor-employees. The majority does not deal with his claim that he is bound by neither the collective-bargaining agreement nor the resulting arbitration, because he is not properly a member of the bargaining unit. *See Joint Council of Teamsters, No. 42 v. NLRB*, 671 F.2d 305 (9th Cir. 1981). If he is not an "employee" for purposes of the National Labor Relations Act, application of the collective bargaining agreement to him is an unfair labor practice under 29 U.S.C. § 158(e). *Id.* If he is not bound by the contract, then he is not bound by the results of arbitration under the contract. This again is a question of federal labor law which we, as the reviewing court, are obligated to consider. Because we have not done so, I dissent.