671 F.2d 305
 JOINT COUNCIL OF TEAMSTERS, NO. 42, et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Associated Independent Owner-Operators, Inc., Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
BUILDING MATERIAL AND DUMP TRUCK DRIVERS, LOCAL 420, et al.,
Respondents.
Associated Independent Owner-Operators, Inc., Associated
General Contractors of California, Inc.,
California Dump Truck Owners
Association, Intervenors.
CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Associated Independent Owner-Operators, Inc., Intervenor.
 Nos. 80-7455, 80-7456 and 80-7457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1981.
 Decided Dec. 21, 1981.
As Amended on Denial of Rehearing and Rehearing En Banc March 2, 1982.
 
 George A. Pappy, Pappy, Kaplon & Vogel, Robert Varde Kuenzel, Latham & Watkins, Los Angeles, Cal., for Dump Truck Drivers and Owners and for Joint Council.
 David S. Fishback, N.L.R.B., Washington, D. C., argued for N.L.R.B.; Elliott Moore, Washington, D. C., on brief.
 Before ELY and NORRIS, Circuit Judges, and COPPLE,* District Judge.
 NORRIS, Circuit Judge:
 
 
 1
 We are called upon in this case to review an order of the NLRB declaring a provision in a collective bargaining agreement to be an unfair labor practice under Sec. 8(e) of the National Labor Relations Act, 29 U.S.C. Sec. 158(e) (1976). The Board invalidated article XIII of the Master Labor Agreement between unions and contractor-employers in the Southern California construction industry because it prohibited general contractors from hiring non-union dump-truck owner-operators. The unions petition to deny enforcement of the Board's order, and the Board seeks a judgment of enforcement.[1] The owner-operators seek an order directing the Board to grant a make-whole remedy requiring the unions to reimburse them for initiation fees and dues paid to the unions, and for income lost by those truck owners who were denied work. We enforce the Board's order, but remand with directions to the Board to fashion a make-whole remedy or show cause why a make-whole remedy is inappropriate.
 
 I.
 
 2
 Section 8(e) prohibits agreements between unions and employers that require a self-employed person to join the union in order to work for the employer.[2] A construction industry proviso to Sec. 8(e) carves out an exception for 'work to be done at the site of the construction.' Our inquiry is whether the Board erred in ruling that the operation of the owner-operated dump trucks in question is not on-site work within the meaning of the Sec. 8(e) proviso.[3]
 
 
 3
 The facts are not in dispute. The dump truck operators haul materials from construction sites to remote dump sites, from 'borrow' pits to construction sites, and from one construction site to another construction site. The truck owners spend most of their time on public roads away from the construction site. The only time spent at the construction site is during loading and unloading, when the dump truck operator ordinarily remains in his vehicle. See Joint Council of Teamsters No. 42, et al., 248 N.L.R.B. 808, 816-17 (1980).
 
 
 4
 On these facts, the Board found that the owner-operators are delivery persons, not construction site workers, and therefore their work is not covered by the on-site proviso. That finding is consistent with Board findings in similar cases involving delivery of goods to a construction site. See Drivers Local 695 v. NLRB, 361 F.2d 547, 552 n.19 (D.C.Cir.1966). In doubtful situations, we give weight to the Board's application of the Act, NLRB v. Denver Building and Construction Trade Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284 (1951); where, as here, the situation is not doubtful, we readily enforce the Board's order.
 
 
 5
 None of the unions' arguments against the Board's order is persuasive. First, they cite this circuit's recent interpretation of the on-site proviso in Pacific Northwest Chapter of the Associated Builders and Contractors, Inc. v. N.L.R.B., 654 F.2d 1301 (9th Cir.) (en banc), cert. granted, ---- U.S. ----, 102 S.Ct. 90, 70 L.Ed.2d 83 (1981). That case is not on point. The only issue decided in Pacific Northwest was whether the Sec. 8(e) proviso 'renders lawful clauses in collective bargaining contracts forbidding the employers to subcontract work at any construction site to a firm not having a contract with the signatory union.' 654 F.2d at 1304 (emphasis added). In Pacific Northwest, where it was undisputed that the workers were engaged in on-site work, the court recognized that 'the construction industry proviso narrowed the geographical scope of the [rule allowing secondary tactics] by introducing the jobsite limitation.' 654 F.2d at 1313.
 
 
 6
 Second, the unions compare the on-site proviso in Sec. 8(e) to an on-site proviso in the Davis Bacon Act (concerning minimum wages for construction workers on government contracts), arguing that the Federal Wage Appeals Board has held that it includes transportation between a construction site and a remote dump site. See T. L. James & Co., Wage Appeals Board Case No. 69-2 (Aug. 13, 1969). We question the unions' reading of T. L. James. The Wage Appeals Board only held that a remote dump site or borrow pit is a part of the construction site. Slip op. at 6. The Board did not explicitly address the issue of transportation between the main site and the remote site. Moreover, we reject the unions' comparison of the two Acts. Neither the legislative history nor the text of the statute suggests that Congress intended Sec. 8(e) to parallel the Davis Bacon Act.
 
 
 7
 Third, the unions rely on a Ninth Circuit affirmance of an arbitration award where, in the process of interpreting a provision in a collective bargaining agreement, the arbitrator determined that transportation between a construction site and a supply site was on-site work within the meaning of Sec. 8(e). See La Mirada Trucking, Inc. v. Teamsters Local Union 166, 538 F.2d 286, 288 (9th Cir. 1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977). That decision has little bearing on the case before us. In La Mirada, the court did not interpret the on-site proviso to Sec. 8(e); the court merely held reasonable the arbitrator's interpretation of a provision in a collective bargaining agreement, which the parties had stipulated to be identical to the on-site proviso of Sec. 8(e). 538 F.2d at 289. Thus, the La Mirada court did not hold as a matter of law that transportation between a supply site and a construction site fits within the construction industry proviso.
 
 II.
 
 8
 The truck owners claim that the Board's cease and desist order is an inadequate remedy. They contend that the Board should also order reimbursement of initiation fees and dues that the truck owners had paid to the union plus compensation for income lost to those truck owners who were denied work.
 
 
 9
 Although Sec. 10(c) of the Act[4] vests broad discretion in the Board to fashion remedies that effectuate the policies of the Act, see Fibreboard Paper Products Corporation v. N.L.R.B., 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964), that discretion is not unlimited. See Acco Construction Equipment, Inc. v. N.L.R.B., 511 F.2d 848, 852 (9th Cir. 1975). In cases where money has been collected illegally, the Board should order a refund, absent some rational ground for not doing so. Id. We hold that the Board has failed to offer a rational ground for refusing to order reimbursement in this case.
 
 A.
 
 10
 The Board's principal reason for denying reimbursement is that the unions neither directly coerced the dump truck owner-operators to pay union fees nor illegally coerced the general contractors to accept article XIII in the collective bargaining agreement.[5] Either form of coercion would have constituted a violation of Sec. 8(b)(4) of the Act.[6] Although the Board ruled that article XIII violated Sec. 8(e) of the Act, it reasoned that reimbursement is inappropriate in the absence of a Sec. 8(b)(4) violation.
 
 
 11
 We reject the Board's reasoning that the purposes of the Act are effectuated by reimbursement for violations of Sec. 8(b)(4), but not for violations of Sec. 8(e).[7] To be sure, reimbursement is inappropriate in the absence of coercion. See Local 60, United Brotherhood of Carpenters v. N.L.R.B., 365 U.S. 651, 655-56, 81 S.Ct. 875, 877-78, 6 L.Ed.2d 1 (1961).[8] But when an unlawful collective bargaining agreement is itself coercive, there is no logical reason for denying reimbursement because of the absence of a technical Sec. 8(b)(4) violation. Article XIII presented the truck owners with the grim choice of joining the union or foregoing work with the signatory employers. Although the unions may not have employed coercive tactics, violative of Sec. 8(b)(4), the inclusion of article XIII in the collective bargaining agreement would necessarily have had the effect of coercing otherwise reluctant truck owners to join the union.[9] See Sheraton-Kauai Corp. v. N.L.R.B., 429 F.2d 1352, 1357 (9th Cir. 1970).
 
 
 12
 We are unable to distinguish this case from two cases in which the Board ordered restitution to parties who joined unions pursuant to illegal collective bargaining agreements.[10] See Sheraton-Kauai Corp., 177 N.L.R.B. 25 (1969), enforced, 429 F.2d 1352, 1357-58 (9th Cir. 1970). Local 814, Teamsters (Santini Brothers) 208 N.L.R.B. 184 (1974), enforced, 546 F.2d 989 (D.C.Cir.1976), cert. denied, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977).
 
 
 13
 In Santini Brothers, by staging a walkout, the union coerced the employer to accept a restrictive collective bargaining agreement; enforcement of that agreement, in turn, coerced independent truckers to join the union. The Board found violations of both Sec. 8(b)(4) and Sec. 8(e), and ordered reimbursement to the independent truckers.
 
 
 14
 We are not persuaded that the Sec. 8(b)(4) violation in Santini Brothers justifies granting restitution in that case, while denying it here. The Board would have restitution turn on the union's use of a coercive tactic, violative of Sec. 8(b)(4), to persuade the employer to accept a restrictive provision. The relevant inquiry, however, is whether the truck owners, irrespective of any coercion of the employer, were coerced into union membership by an unfair labor practice.
 
 
 15
 The Board implicitly recognized this principle in Sheraton-Kauai. In that case, the employer and union illegally extended a union security clause in a collective bargaining agreement to employees of a new hotel, thus denying the employees an opportunity to resolve the question of union representation for themselves. The union did not coerce the employer in violation of Sec. 8(b)(4); nor did the union directly coerce the employees. Nonetheless, the Board ordered restitution after finding that, by 'submitting [the employees] to the terms and conditions of the . . . agreement,' the union effectively coerced the employees into union membership. 177 N.L.R.B. at 29.
 
 
 16
 Reimbursement in this case, as in Sheraton-Kauai and Santini Brothers, would effectuate the policies of the Act by returning to the truck owners money paid to support a union they did not freely choose to join, and by depriving the unions of the benefit of their unfair labor practice. See Virginia Electric and Power Company v. N.L.R.B., 319 U.S. 533, 541, 63 S.Ct. 1214, 1219, 87 L.Ed. 1568 (1943); Graphic Arts International Union Local 280 v. N.L.R.B., 596 F.2d 904, 910 (9th Cir. 1979).[11]
 
 B.
 
 17
 We find unpersuasive the other reasons offered by the Board for denying reimbursement.
 
 
 18
 First, we are confused by the Board's contention that the remedial issue was not expressly litigated. The truck owners raised the remedy issue in their brief to the Board as charging party. To the extent that factual issues remain--such as the amount of damages--they can be resolved in an NLRB proceeding. See N.L.R.B. v. Local 776, Film Editors, 303 F.2d 513, 521 (9th Cir.), cert. denied, 371 U.S. 826, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962).
 
 
 19
 Next, the Board said that the truck owners had an alternative remedy under Sec. 303. It would be wasteful and unfair to force the truck owners, who have opposed unionization in legal proceedings for ten years, see Associated General Contractors of California, Inc. v. N.L.R.B., 564 F.2d 271 (9th Cir. 1977), to renew the battle in a Sec. 303 proceeding. Moreover, we see no reason to burden a federal district court with Sec. 303 litigation, when reimbursement can be ordered in an NLRB proceeding. Cf. Sheraton-Kauai Corporation v. N.L.R.B., 177 N.L.R.B. 25 (1969) (by implication) (ordering reimbursement where a Sec. 303 remedy might have been available), enforced, 429 F.2d 1352 (9th Cir. 1970); Local 814, Teamsters (Santini Brothers) 208 N.L.R.B. 184 (1974) (same), enforced, 546 F.2d 989 (D.C.Cir.1976), cert. denied, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977).
 
 
 20
 Finally, the Board noted that reimbursement orders are typically used to 'make whole' employees. We note, however, that the Board has also ordered reimbursement for employers and independent contractors when to do so would effectuate the policies of the Act. See, e. g., Graphic Arts International Union Local 280, 235 N.L.R.B. 1084, 1085 (1978), enforced, 596 F.2d 904 (9th Cir. 1979) (employer); Local 814, Teamsters (Santini Brothers) 208 N.L.R.B. 184 (1974), enforced, 546 F.2d 989 (D.C.Cir.1976), cert. denied, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977) (independent contractors).
 
 
 21
 For these reasons we remand to the Board to fashion a make-whole remedy[12] or to show good cause why a make-whole remedy would not effectuate the purposes of the Act.[13] See Acco Construction Equipment, Inc. v. N.L.R.B., 511 F.2d 848, 852 (9th Cir. 1975).
 
 
 22
 Order ENFORCED IN PART and REMANDED for consideration consistent with this opinion.
 
 
 
 *
 The Honorable William P. Copple, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 The general contractors intervene in support of the Board's position; they are represented by the Associated General Contractors of California, Inc., the Building Industry Association of California, the Engineering Contractors Association, and the Southern California Contractors Association. The unions include the Joint Council of Teamsters No. 42, et al. The truck owners are represented by the California Dump Truck Owners Association and the Associated Independent Owner-Operators, Inc. The proceedings below are reported at Joint Council of Teamsters No. 42, et al., 248 N.L.R.B. 808 (1980)
 
 
 [2]
 Section 8(e) of the National Labor Relations Act, 29 U.S.C. Sec. 158(e) (1976), provides that: 'It shall be an unfair labor practice for any labor organization and any employer to enter into any contract . . . whereby such employer . . . agrees to . . . cease doing business with any other person . . . Provided, that nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction.'
 
 
 [3]
 As a preliminary matter, the unions argue that the dump-truck owner-operators are not self-employed independent contractors, as the Board held, but employees of the general contractor. This argument is foreclosed, however, by Associated General Contractors of California, Inc. v. NLRB, 564 F.2d 271 (9th Cir. 1977), in which this court held that these same dump truck owners are independent contractors
 
 
 [4]
 Section 10(c) of the Act, 29 U.S.C. Sec. 160(c) (1976), provides that 'the Board shall . . . take such affirmative action . . . as will effectuate the policies of this subchapter.'
 
 
 [5]
 The Board offered the following explanation for its denial: 'We hereby deny the Charging Party CDTOA's request that we require Respondent Unions to reimburse any owner-operators for payment of initiation fees and dues, deducted contributions to union benefit funds, or income lost by reason of the enforcement of unlawful terms in MLA art. XIII. The Board has on one occasion adopted without comment an administrative law judge's recommended Order containing such a remedy. Local 814, Teamsters (Santini Brothers, Inc.), [208 N.L.R.B.] at 201. In the present case, however, no evidence has been introduced with respect to alleged losses directly attributable to actual coercion by Respondent Unions, nor has the remedial issue been expressly litigated. Furthermore, we find a reimbursement order, typically used to 'make whole' employees for violations of the Act, to be generally overly broad and inappropriate in the context of 8(e) violations. We note that aggrieved owner-operators engaged in business as independent contractors may pursue a damage claim under Sec. 303 of the Act. For the foregoing reasons, we find that the reimbursement of owner-operators requested by CDTOA would not effectuate the remedial policies of the Act. See Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, et al. v. N.L.R.B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961).' 248 N.L.R.B. at 817 n.34
 
 
 [6]
 29 U.S.C. Sec. 158(b)(4) (1976)
 
 
 [7]
 The NLRB claims that the Board has 'consistently' declined to grant make-whole remedies in cases involving only violations of Sec. 8(e). For support, the NLRB relies on Newspaper and Periodical Drivers and Helpers Union v. N.L.R.B., 509 F.2d 99 (9th Cir. 1974), cert. denied, 423 U.S. 831, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975). In that case, however, the court merely held that the Board did not abuse its discretion in denying back pay to independent contractors terminated in violation of Sec. 8(e). Moreover, the Board's own decision in Newspaper Drivers offers no explanation for denying a make-whole remedy. See Newspaper and Periodical Drivers' and Helpers Union Local 921, 204 N.L.R.B. 440, 448 (1973). Thus, neither the Board's decision, nor the Ninth Circuit's brief affirmance, provides support for a per se rule denying reimbursement in Sec. 8(e) cases
 
 
 [8]
 In Local 60, the Board had ordered reimbursement of union fees and dues paid while an illegal closed-shop preferential hiring agreement remained in effect. The Court refused to enforce the Board's order because it found no evidence that union membership had been coerced. The Court emphasized that persons affected by the order were already union members when employed on the job in question, and that no one had joined the union specifically to obtain work on that job. 365 U.S. at 654, 81 S.Ct. at 877. Thus, Local 60 is readily distinguishable from the case before us
 
 
 [9]
 The Board stated that 'no evidence has been introduced with respect to alleged losses directly attributable to actual coercion by Respondent Unions.' 248 N.L.R.B. at 817 n.34 (emphasis added). We read the Board's statement as merely a finding that the unions did not directly confront truck owners and force them to join the union. Admittedly, the statement might be interpreted as an evidentiary ruling that the truck owners offered no proof that individuals had joined the union as a result of article XIII, as was the case in Local 60, United Brotherhood of Carpenters v. N.L.R.B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961). We doubt, however, that the Board intended that meaning, since the record shows that at every available juncture the truck owners fought the unions' attempt at unionization. See Associated General Contractors of California, Inc. v. N.L.R.B., 564 F.2d 271 (9th Cir. 1977)
 
 
 [10]
 The Board cannot arbitrarily impose different remedies in similar situations. See Burinskas v. NLRB, 357 F.2d 822, 827 (D.C.Cir.1966) ('nor can [the Board] treat similar situations in dissimilar ways')
 
 
 [11]
 Counsel for the NLRB suggested that reimbursement would result in unjust windfalls to the truck owners who may have benefited from becoming signatories to the union. To the extent that the truck owners received actual benefits in return for their fees and dues, the value of these benefits may be deducted from the amount of reimbursable damages. We see no reason, however, to deny the truck owners the opportunity to show that they paid fees that did not lead to benefits. The issue whether fees and dues created comparable benefits remains to be litigated
 
 
 [12]
 We express no opinion at this stage of the proceedings as to whether the Board should order compensation for lost income resulting from enforcement of article XIII. The Board shall consider this claim of the owner-operators on remand
 
 
 [13]
 We note that the D. C. Circuit recently affirmed the Board's denial of a make-whole remedy for dump truck owner-operators in Building Material and Dump Truck Drivers v. N. L. R. B., 669 F.2d 759 at 765-767 (D.C.Cir.1981). For the reasons expressed in text, we reach a different conclusion