Frank I. MARSHALL and Howard S. Myers, Plaintiffs and Cross-Defendants-Appellees,

v.

HOLIDAY MAGIC, INC., et al., Defendants,

Dora Popa and Perry Marshall, Defendants and Cross-Plaintiffs-Appellants.

No. 74–2773.

United States Court of Appeals, Ninth Circuit.

March 8, 1977.

Howard A. Specter, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for appellants.

David C. Phillipps, Tuckman, Goldstein & Phillipps, San Francisco, Cal., David B. Gold, San Francisco, Cal., for appellees.

Before CHAMBERS, CARTER and KENNEDY, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is an appeal from a court approved settlement of class actions against Holiday Magic, Inc., certain of its affiliated corporations, and individual defendants. The settlement is a final judgment entered pursuant to Fed.R.Civ.P. 54(b).

Appellants, who were sued as defendants in one case and filed as cross-plaintiffs, argue that the district court abused its discretion by approving the settlement. They claim there was inadequate representation and notice and that the settlement itself was unreasonable. We disagree and therefore affirm.

*Facts*

Holiday Magic is a cosmetic company which distributes its product via a "pyramid sales" scheme. Distributorships are purchased from the corporation and arranged in a hierarchy. Those at higher levels earn larger profits, thereby encouraging all participants to enlist other distributors into the plan. Continued upward mobility in the hierarchy depends on an infinite supply of distributors.

Approximately 25 actions were filed against Holiday Magic and various affiliated defendants across the country. Eighteen of these suits purported to be class actions asserting claims under the securities and antitrust laws. Most of these actions were transferred to the Northern District of California (which already had six of them) and assigned to Judge Burke by the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407. Judge Burke also presided over an action brought by the Securities and Exchange Commission against Holiday Magic, *SEC v. Holiday Magic, Inc., et al.* (N.D.Cal., No. C–73–1095–LHB).

All of the class action cases except one included as a plaintiff class all of the distributors, whether or not they profited from the scheme. In *Frank I. Marshall and Howard S. Myers v. Holiday Magic, Inc., et al.*, Civil Action No. 72–899, W.D.Pa., 1972,

however, the distributors who had participated in the process by earning fees were named as a defendant class, and appellants were sued as representatives of that class. They filed a cross-claim against Holiday Magic.

In August 1973, Judge Burke held a pretrial conference to consider management of the consolidated cases. Applications were invited for lead counsel. The court appointed David Gold of San Francisco, who was plaintiff's counsel in five of the pending actions.

A three-week hearing was held in July 1973 on the SEC's application for a preliminary injunction. After extensive negotiations, Holiday Magic agreed to a permanent injunction against certain of its marketing practices. Lead counsel for plaintiffs assisted the SEC in this action.

Settlement negotiations in the private suit began shortly thereafter. These culminated in a Stipulation for Compromise and Judgment filed in March 1974. The terms of the settlement required the "settling defendants" (including Holiday Magic and its affiliates) to transfer property worth $2,600,381 to a trust fund established for the benefit of the class. They agreed to repay dollar for dollar all sums paid by class members to Holiday Magic, supplementing the trust with income from their continuing business operations if necessary. A claims procedure was established under the jurisdiction of the district court.

A court approved "Legal Notice and Claim Form" was sent to over 31,000 class members on April 10, 1974. The notice advised class members of the pendency of the action, of their potential inclusion in the class, of the terms of the proposed settlement, of the hearing on whether the settlement should be approved, and of their rights to object to the settlement or exclude themselves from the class. Potential claimants were given until May 6, 1974, to opt out. Approximately one percent did so. Appellants, however, did not.

Prior to the hearing, extensive memoranda were filed both in support of and in opposition to the proposed settlement. More than 20 attorneys appeared at the hearing and argued before the court. A representative of the SEC spoke in favor of the settlement. The court finally approved the settlement on May 16, 1974, and entered findings of fact and conclusions of law in support of it.

### Standing

■ Appellees argue that appellants lack standing because they are neither members of the plaintiff class nor settling defendants. Thus appellees contend, they have no interest in the judgments. However, the class as determined by the district court consisted of all distributors and security holders of Holiday Magic. Appellants fall into this category and received notice as members of this plaintiff class. As members of the class, their legal rights are affected by the settlement and they have standing to sue. *See Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 32–33 (3 Cir. 1971). *See generally* 3B W. Moore, Federal Practice ¶ 23.80(5) (1969).

### Maintenance as a Class Action

Appellants argue that there were conflicts of interest among the plaintiffs such that no single class action could be maintained. They base this contention on the fact that in at least one case, participating distributors were sued along with Holiday Magic. They argue that adequate representation by a single lead counsel was impossible because of these intra-class conflicts.

■ The determination as to whether a class action should be maintained is committed to the sound discretion of the district court and will not be disturbed on appeal absent a showing of abuse of discretion. *Clark v. Watchie,* 513 F.2d 994, 1000 (9 Cir. 1975); *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9 Cir. 1974). The two general requirements for a class action under Rule 23 are numerosity and adequate representation. Appellants challenge only the district court's finding that the class could be adequately represented in light of the alleged intra-class conflicts.

■ Only that one case involving appellants, out of the 25 cases brought, named any distributors as defendants. This suit attempted to define a defendant class as well as a plaintiff class. The court refused to sanction class action status for this sole suit (even though it could have done so). We agree with this decision. This one action involved only individual claims collateral to the class action itself. Such claims can be settled by separate actions. *See Donson Stores v. American Bakeries*, 58 F.R.D. 485 (S.D.N.Y.1973). There are no conflicts within the plaintiff class since any actions between class members may still be pursued outside of the class action.

■ All plaintiffs have asserted individual claims against the settling defendants. That some of the plaintiffs may have claims against each other does not detract from their identical legal and factual claim against the settling defendants. *See Vernon J. Rockler & Co. v. Graphic Enterprises*, 52 F.R.D. 335, 342 (D.Minn.1971); *Mersay v. First Republic Corp. of America*, 43 F.R.D. 465, 468 (S.D.N.Y.1968). Substantial conflict going to the subject matter of the lawsuit is necessary to prevent class action treatment. *Northern Acceptance Trust 1065 v. AMFAC, Inc.*, 51 F.R.D. 487 (D.Haw.), *rev'd in part on other grounds*, 441 F.2d 704 (10 Cir.), *cert. denied*, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971). Such conflict does not exist here.

■ Each of the cases cited by appellants is distinguishable because there was substantial intra-class conflict as to the relief sought. In this case, all plaintiffs have liability claims against the settling defendants and brought separate actions against them. There was no conflict as to the relief sought and hence not the type of class conflict we believe renders maintenance of the action an abuse of discretion. *Cf. Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

Moreover, whatever differences may have existed within the class could have been reduced by certain class members opting out. Section (c)(2) of Rule 23 grants class members an opportunity for self-exclusion if the suit is brought, as here, under § (b)(3). *See* Fed.R.Civ.P. 23(c)(2)(A). Appellants had the right and opportunity to opt out in this action. They chose not to. We believe that they should not now be allowed to play the role of spoilers for a class of more than 31,000 people when they could have chosen not to be bound by the settlement. *See generally Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1485–89 (1976) (hereinafter cited as Developments).

This conclusion is reinforced in this case by the fact that all class members were given the right to opt out *after* being apprised of the terms of the settlement. Appellants were not forced into a position of having to predict whether their interests would be adequately represented. They could determine whether there had been adequate representation of their interests by reviewing the terms of the settlement. If they were dissatisfied, they could opt out of the class. This opportunity to opt out after knowing the terms of a proposed settlement is unusual in the class action context and serves to protect the interests of class members. *See Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3 Cir. 1971). Appellants' rights were fully protected by this right to opt out. We therefore hold that they were adequately represented.

### Notice

■ Notice in a class suit must present a fair recital of the subject matter and proposed terms and given an opportunity to be heard to all class members. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Appellants allege that this standard was violated.

■ They argue that the notice did not fairly apprise class members of their positions because it did not specify their potential recovery. It is obvious, however, that this was a matter of conjecture since it was

unknown how many class members would opt out or submit claims. The aggregate amount available to all claimants was specified and the formula for determining one's recovery was given. Nothing more specific is needed. *See Cannon v. Texas Gulf Sulfur*, 55 F.R.D. 308, 313 n. 2 (S.D.N.Y.1972) (approval of the TGS settlement).

██ Appellants also contend that the notice was biased because it advised that litigation beyond the settlement would probably force Holiday Magic into bankruptcy. This is an accurate statement of the condition of defendant, and thus it only advised class members of the hazards of continued litigation. The notice also did not advise individual litigants as to their own potential future liability, and it should have. But such liability would be limited to only a few members of the class and the potential for it was remote (as evidenced by the single case involving participating distributors). Therefore, it cannot be said that the court abused its discretion by approval of this notice. *Cf. Chicken Delight v. Harris*, 412 F.2d 830, 831 (9 Cir. 1969) (dispensing with individual issues in the notice).

██ Appellants lastly claim that class members were given inadequate time to intelligently respond to the notice. There were 26 days between the mailing of the notice and the deadline for opting out. All of the class members were participants in the Holiday Magic pyramid scheme and knew the issues involved. Thus, the month's time seems more than adequate. *See Milstein v. Werner*, 57 F.R.D. 515, 518 (S.D.N.Y.1972) (approving a 38-day period with less informed class members).

### Settlement Approval

██ A court must find a class action settlement fair and adequate to all persons before approving it. *Norman v. McKee*, 431 F.2d 769, 774 (9 Cir. 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971). This court on appeal will reverse those findings only upon a clear showing of an abuse of discretion. *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8 Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct.

124, 46 L.Ed.2d 93 (1975); *State of West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1085 (2 Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). It is with these legal precepts in mind that we turn to approval of the settlement.

In *Protective Committee v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), the Supreme Court outlined several factors in considering the acceptability of a settlement. These included the strength of the plaintiff's case, the expense and likely duration of further litigation, the amount of the settlement, and the defendant's ability to pay a judgment larger than that provided by the proposed settlement. *Id.* at 424–25, 88 S.Ct. 1157. *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2 Cir. 1975) (outlining similar factors).

██ The terms of the settlement here called for all nonoperating assets of the settling defendants to be transferred to the class action trust. An arrangement for future additions to this trust out of operating income was made. The evidence indicates that Holiday Magic might have been forced into bankruptcy had any larger amount, by way of settlement or judgment, been exacted. More important, though, each class member was offered 100% of the amount he paid to Holiday Magic in any form at any time. Based on the standard of *Protective Committee, supra,* this settlement appears more than fair.

██ This conclusion is supported by the fact that the SEC participated in and approved of the settlement. The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration. *See Developments, supra,* at 1563, 1571. The small number of class members indicating their disapproval of the settlement, here only one percent, also indicates its acceptability. *Cf. id.* at 1567–68.

██ Of course, the district court must provide a record which adequately reveals the basis for its decision. This court has

stated that when objections are made, the trial court must set forth on the record a reasoned response thereto. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 836 (9 Cir. 1976). The findings of fact and conclusions of law set forth by the district court provide an adequate basis for this court to determine that the settlement was indeed fair. However, these findings did not provide a "reasoned response" to appellants' objections as required by *Mandujano.*

But we do not think that such specificity was required here. Appellants object to this settlement not on behalf of the class but because of their potential liability as defendants and their inability under the settlement to sue for indemnity or contribution from Holiday Magic. This is an understandable concern, but one which would have been solved by opting out of the class. They then would have preserved any separate cause of action against Holiday Magic, including one for indemnification or contribution.

Appellants now are playing spoilers. The court in *Mandujano* recognized that specific responses to objections in such an instance were unnecessary. *Id.* at 836. We believe that the failure of the district court to give detailed responses to appellants' objections does not call for throwing out a settlement in a complicated lawsuit for a class of more than 31,000 people.

### Conclusion

The judgment of the district court is AFFIRMED.

KENNEDY, Circuit Judge, concurring:

In every class action, the attorney for the class owes the duty of fair representation to each class member. I do not believe that a provision for opting out of the class provides an entirely satisfactory answer to the claim that a lead attorney failed to discharge that duty of representation. Particularly where the settlement could be easily modified to resolve the class conflicts, the dissident members should not be required to take the settlement or leave it. *Cf.* Devel-

opments—Class Actions, 89 Harv.L.Rev. 1318, 1488 (1976).

My view of the implications of our decision in *Mandujano v. Basic Vegetable Products*, 541 F.2d 832 (9th Cir. 1976), moreover, may differ somewhat from that suggested by the majority. It is not clear that *Mandujano*, which sets forth precise procedures for district courts to follow in class actions brought under Fed.R.Civ.P. 23(b)(2), is applicable to a class action like the one here, brought under rule 23(b)(3). Nevertheless, it is unnecessary for us to decide the scope of the *Mandujano* decision, for the district court, acting prior to the formulation of the rules in *Mandujano*, in essence provided the procedural protections required by that case. The record indicates that the court below considered the objections now raised on appeal and allowed the objections to be argued in open court. The district court concluded that the class of individuals of appellants' status, *i.e.*, those persons who earned fees as distributors, could not properly be certified as a subclass, since each claim against those persons would have to be tried individually. The court further stated that if the appellant or any other distributor claimed indemnity or contribution from the settling defendants, such claims also would require individual determinations. Given the absence of an appropriately certifiable subclass, the district court expressed serious doubts whether it could, under rule 23, require each class member to release his claims against all other members of the plaintiff class. The issue was argued extensively and preserved in the transcript of proceedings below. Consequently, the district court afforded to the appellants what amounts to a reasoned response after a hearing on the objections. These are essentially the safeguards that *Mandujano* requires.

The record is wholly adequate to enable proper appellate review of the questions whether appellants were denied adequate legal representation and whether intraclass conflicts made the settlement unfair. A review of the record indicates that the representation was fair and adequate as to

appellants and all other members of the plaintiff class. The trial court correctly rejected the objections of appellants and acted within its discretion in approving the settlement. I therefore concur in the judgment of the court.