[No. D048181. Fourth Dist., Div. One. Apr. 23, 2007.]

CRAIG SEASTROM et al., Plaintiffs and Appellants, v.
NEWAYS, INC., et al., Defendants and Respondents.

## COUNSEL

Law Offices of Darren J. Quinn, Darren J. Quinn, Alexander E. Papaefthimiou; and Aubrey D. Boyd for Plaintiffs and Appellants.

Jones Day, Frederick D. Friedman and Christina D. Coates for Defendants and Respondents.

## OPINION

**McCONNELL, P. J.**—In this action for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and related counts, plaintiffs Craig Seastrom and Gary Hutcheson appeal an order denying their motion to certify a class consisting of all persons who purchased a version of the product BioGevity that contained human growth hormone (HGH), which defendants illegally sold without a prescription. Seastrom and Hutcheson challenge the trial court's findings that since they were distributors of BioGevity and profited from the sale of the product, their claims are not typical of those of other class members and they would not adequately represent the class. We find no abuse of discretion and affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Between approximately March 1999 and April 2000, defendant Neways, Inc., manufactured and distributed an oral spray called BioGevity, which

contained HGH, known as somatropin or somatotropin.[1] Neways promoted BioGevity as an anti-aging dietary supplement. HGH cannot legally be sold without a prescription, and Neways did not require prescriptions.

In a pyramid sales scheme, Neways contracted with independent distributors to distribute BioGevity. Distributors could purchase the various formulations of BioGevity for between $59 and $66 per bottle, and the suggested resale price was $84.35 to $94.40. Distributors were entitled to keep the difference between the wholesale and retail prices on products they sold directly, and to commissions on the sale of products by distributors under them in the pyramid scheme.

In December 1998 Hutcheson, under the business name Seed Sowers, entered into a distribution agreement with Neways. In March 1999 a business called October Dynamics, owned by Seastrom and his wife, entered into a distribution agreement with Neways. October Dynamics earned at least $126,048.60 in commissions from Neways and obtained the level of "Diamond Ambassador," and Hutcheson earned at least $155,875.18 in commissions from Neways. Hutcheson and October Dynamics, directly or indirectly, sold "thousands of bottles of Neways product," totaling more than $2,500,000 and $900,000, respectively. Hutcheson had more than 8,800 distributors in his pyramid "downline."

Before distributing BioGevity for Neways, both Seastrom and Hutcheson distributed a nasal spray that contained HGH for a company named Quantum Leap. While with Quantum Leap Hutcheson read a book on the anti-aging effects of HGH, after which he believed HGH "was a great thing" and "something that baby boomers would love." While at Quantum Leap Seastrom also read a book about the benefits of HGH supplementation. The Texas Attorney General investigated Quantum Leap for its sale of HGH products without prescriptions, and it ceased doing business in approximately March 1999.

When Neways introduced BioGevity at a convention in February 1999, Hutcheson realized it had the same formula as the product he distributed for Quantum Leap. Hutcheson was "excited" because "this oral spray HGH product with the polymer matrix that I was taught all about at Quantum Leap . . . shows up at Neways."

The United States Attorney's Office investigated Neways's sale of BioGevity without prescriptions. In September 2003 Neways pleaded guilty to knowingly

---

[1] The complaint also names as defendants Neways International, Nature's Scienceuticals, Tom Mower and Dee Mower. We refer to defendants collectively as Neways.

selling approximately 100,000 bottles of a product that contained HGH in violation of title 21 United States Code section 333(e), and to criminal forfeiture under sections 333(e)(3) and 853(a)(1). Neways stipulated to a fine of $500,000 and the forfeiture of $1.25 million, the profits it made from the sale of BioGevity. The government agreed not to prosecute Neways's distributors.

This action began in June 2003 when Marc Lewis sued Neways for unfair competition. Lewis had never purchased BioGevity and his claim was eliminated after Proposition 64 amended the standing requirements of unfair competition law. Other plaintiffs filed first and second amended complaints, but those plaintiffs withdrew. Seastrom and Hutcheson were added in a third amended complaint, and in May 2005 they filed a fourth amended complaint, which is at issue here, for fraud, breach of contract, rescission and violation of Business and Professions Code section 17200 et seq. The fourth amended complaint (hereafter complaint) prays for reimbursement or restitution of the purchase price of BioGevity and punitive damages for fraud.

Seastrom and Hutcheson then moved for certification of a class consisting of "all persons who purchased BioGevity containing somatropin or an analogue thereof." The court denied the motion, finding their claims are not typical of those of other class members, and they would not adequately represent the class.

## DISCUSSION

### I

██ " 'Class actions serve an important function in our judicial system. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress.' " (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469 [174 Cal.Rptr. 515, 629 P.2d 23].) However, "because group action . . . has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

██ "The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of

law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc., supra*, 29 Cal.3d at p. 470; see also Code Civ. Proc., § 382.)

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [Citations.] [I]n the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' [Citation.] Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' " (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 435–436.)

## II

### A

In denying class certification, the court found Seastrom and Hutcheson did not demonstrate their claims are typical of the class, or that they would adequately and fairly represent the class. The court was concerned with "how high they were up in the pyramid [at Neways] and the possible ramifications of that," and "what was their involvement with Quantum Leap and the possible ramifications of that." The court elaborated that "if I certify a class with these two class representatives and defendant showed that [they] were high in the pyramid, made a lot of money in the pyramid, knew of the requirement for a prescription for the product . . . that, to me, is the vulnerability or potential vulnerability . . . of these two prospective representatives." Seastrom and Hutcheson's counsel acknowledged that if they were class representatives, they would testify at trial and be subject to cross-examination on their positions in the Neways hierarchy and their prior experience at Quantum Leap.

The court was also concerned Seastrom and Hutcheson may not have suffered any compensable damage, as they profited on their distribution of BioGevity. Further, the court pointed out that Seastrom and Hutcheson had acknowledged in their depositions that they were potentially subject to civil claims "by buyers downstream of them on the distribution line," and that was "some concern" to them.

■ The court properly exercised its discretion. Named representatives will not fairly and adequately protect the interests of the class when there are conflicts of interest between them and the class they seek to represent. (*Janik v. Rudy, Exelrod & Zieff* (2004) 119 Cal.App.4th 930, 943–944 [14 Cal.Rptr.3d 751].) " 'It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.' " (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.)

Given that Seastrom and Hutcheson are potential *defendants* in the proposed class action, they have an insurmountable conflict. The complaint seeks forfeiture and restitution of the purchase price of BioGevity on behalf of the plaintiff class, but Seastrom and Hutcheson made commissions on the sale of the product to the class members. As the court noted, "If the persons at the very bottom wanted to ensure their maximum recovery, would they sue everyone between them and [Neways]?" That objective is obviously not in Seastrom and Hutcheson's best interests. For instance, in deposition Seastrom took the position that proposed class members in his chain of distribution should not be made whole because he should not have to disgorge any profits he made on the distribution of BioGevity. The named representatives, in other words, seek to retain profits their complaint describes as illegal, and thus the conflict goes to the very subject matter of the litigation. (*Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d at p. 470.) Indeed, the court appropriately questioned whether this action "is a preemptive strike by the two class representatives."

■ The above is dispositive, but Seastrom and Hutcheson also failed to satisfy the typicality requirement, the purpose of which "is to assure that the interest of the named representative aligns with the interests of the class. [Citation.] ' "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." ' [Citations.] The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' [Citation.] [¶] Several courts have held that 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.' " (*Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508.) ■ A "named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representation is preoccupied with defenses unique to it.' " (*Ibid.*)

■ Seastrom and Hutcheson are vulnerable to unique defenses that would likely become the focus of the litigation. For instance, reliance is an element

of the fraud cause of action, and their positions with Neways and Quantum Leap would likely give Neways a defense that is unavailable or less available against other class members. Although Seastrom and Hutcheson denied that while they were associated with Quantum Leap they were aware it was illegal to sell HGH products without prescriptions, they would certainly be subject to cross-examination on that and other issues peculiar to them given their past relationships with Quantum Leap and Neways. When a purported representative may not be as justified in relying on material representations or omissions of material fact as other purchasers of a product, the court may deny a motion for class certification for lack of typicality. (*Koos v. First National Bank of Peoria* (7th Cir. 1974) 496 F.2d 1162, 1164–1165.)

B

Seastrom and Hutcheson rely on *Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173 (*Marshall*), for the proposition that "a pyramid scheme or structure is no impediment to class certification." In *Marshall*, 25 actions for violation of securities and antitrust laws were consolidated, and the certified plaintiffs' class consisted of *distributors*, whether or not they earned fees, and security holders of a company that sold cosmetics under a pyramid scheme. (*Id.* at p. 1176.) The action did not involve a challenge to the named plaintiffs as representatives, and proposed class members did not include purchasers of cosmetics who were not distributors, as here. Rather, the case was an appeal of a court-approved settlement in which the appellate court rejected the argument that adequate representation by a single *counsel* was impossible because of "intra-class conflicts." (*Id.* at p. 1177.) The supposed conflicts were based on attempts in one of the 25 complaints to define a *defendant* class consisting of distributors who earned fees from the sale of the cosmetics. The court noted, however, that class action status was not granted for that single suit, it "involved only individual claims collateral to the class action itself," and "[s]uch claims can be settled by separate actions." (*Ibid.*) *Marshall* has nothing to do with the issues here.

Likewise, *National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1285 [1 Cal.Rptr.2d 325] (*National Solar*), which cited *Marshall*, is unhelpful. In *National Solar*, the appellate court held the trial court abused its discretion by finding an association would not adequately represent a proposed class of 2,070 persons who had purchased solar heating equipment as part of an investment program designed to take advantage of the energy crisis and changes in tax laws. In addition to investing, approximately five percent of the class helped sell the investment program as financial planners. The court noted, however, that the financial planners had exerted no control over the association since 1985, and "class certification cannot be denied on the basis of a conflict which has been cured

by the time the class seeks certification." (*Id.* at p. 1285.) Further, the class members voluntarily joined the association, its counsel in the action kept them apprised of significant developments, including the decision to exclude financial planners from the board of directors, and more than 2,000 members chose to continue to have the association represent them. (*Ibid.*) Here, in contrast, the conflict has not been resolved. Finally, the financial planners in *National Solar* were not seeking to be class representatives. Rather, an association comprised of 95 percent investors were seeking that position.

Seastrom and Hutcheson's reliance on *Richmond v. Dart Industries, Inc., supra,* 29 Cal.3d 462, is also misplaced. In that case, the court rejected the argument that antagonism per se by members of a class automatically precludes class certification. There, the results of a questionnaire showed that no more than approximately 6 percent of some 4,000 persons were antagonistic to a class suit against a developer for fraud and statutory violations, and the court held "[t]his small number should not be sufficient to defeat the motion for certification." (*Id.* at p. 475.) Here, in contrast, all class members who purchased but did not distribute BioGevity would naturally be antagonistic to representation by Seastrom and Hutcheson, as well as distributors lower on the pyramid hierarchy. It is undisputed that Hutcheson alone had more than 8,800 distributors in his pyramid "downline." Again, the purpose of the action is to recover sums paid to purchase BioGevity, and Seastrom and Hutcheson received a portion of those sums.

█ We need not discuss other opinions Seastrom and Hutcheson cite, because they also do not pertain to the factual situation here. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93]; see *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].) Contrary to their position, the court did not use improper criteria or make erroneous legal assumptions in denying class certification on the grounds their claims are atypical of those of other prospective class members and they would not adequately represent the class. Further, substantial evidence supports the court's ruling, and thus it did not abuse its discretion.[2]

---

[2] At the close of the hearing before the trial court, plaintiffs' counsel requested leave to amend the complaint to add another plaintiff. The court did not address the issue in its ruling, and it appears plaintiffs did not pursue it further.

At oral argument before this court, plaintiffs, in their reply to defendants' presentation, repeated the request for leave to amend in the event we decided against them. Plaintiffs, however, waived the matter by not addressing it in their appellate briefs. (*Tan v. California Fed.*

## DISPOSITION

The order is affirmed. Neways is entitled to costs on appeal.

Benke, J., and Irion, J., concurred.

*Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775]; *California Recreation Industries v. Kierstead* (1988) 199 Cal.App.3d 203, 205, fn. 1 [244 Cal.Rptr. 632].) Plaintiffs also requested that we delineate whether a representative in any class action against Neways must be a "pure consumer," meaning uninvolved in the distribution chain. We decline to issue an advisory opinion on the issue.