Filed 5/9/16  Rel v. Pacific Bell Mobile Services CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANGELA REL et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>PACIFIC BELL MOBILE SERVICES et al.,<br><br>    Defendants and Respondents. | A144349<br><br>(San Mateo County<br>Super. Ct. No. CIV 436164) |

Angela Rel and Monica Hodge appeal from an order granting respondents' motion to strike class allegations from appellants' seventh amended complaint.  Appellants contend the court erred by (1) striking class allegations on the ground that appellants had no standing to obtain the relief sought by the class; (2) denying appellants leave to conduct precertification discovery to locate other class representatives; and (3) concluding that the putative class could not pursue a restitution remedy.

We will reverse the order striking the class allegations.

## I.  FACTS AND PROCEDURAL HISTORY

This case has been the subject of numerous trial court rulings and appellate proceedings, including the appeal that was the subject of our published decision in *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201 (*Tucker II*).  We discuss only those matters germane to this opinion.[1]

---

[1]    Other proceedings include appellate numbers A141506, A126077, and A106671.

1

A. Prior Proceedings and *Tucker II*

Diane Tucker initiated this action in December 2003 as a putative private attorney general under the unfair competition law (UCL, Bus. & Prof. Code, § 17200 et seq.). (See *Tucker II, supra,* 208 Cal.App.4th at p. 208.) Tucker challenged respondents' marketing of their "bucket plans," which essentially purported to give subscribers a specified number of minutes of use for a monthly rate. (*Id*. at p. 208 & fn. 2.) After the voters enacted Proposition 64, Tucker lacked standing to proceed with the UCL claims. (*Id*. at p. 209, 208, fn.4.)

Appellants Rel and Hodge, along with Julia Knapp, were added to the action as plaintiffs. (*Tucker II, supra*, 208 Cal.App.4th at p. 208, fn. 4.) After pleading amendments and class-related discovery, appellants filed a fifth amended complaint in 2011. (*Id*. at p. 209.) The first three causes of action of the fifth amended complaint were asserted under the UCL; a fourth cause of action alleged fraud; and a fifth cause of action complained of a violation of the Consumer Legal Remedies Act (CLRA, Civ. Code, § 1750 et seq.). Plaintiffs sought to represent a class composed of " 'all consumers who have subscribed to a term contract for wireless telephone service in California from one or more of the Defendants herein, at any time from and after January 1, 1999 until the present time.' " (*Tucker II, supra*, 208 Cal.App.4th at p. 209.)

Respondents demurred to the class allegations of the fifth amended complaint, contending there was no reasonable probability plaintiffs could certify a class. The trial court sustained this demurrer without leave to amend, concluding that plaintiffs could not establish the requisite community of interest and predominance of common questions for class treatment. (Knapp later voluntarily dismissed her claims, leaving Rel and Hodge as plaintiffs.) (*Tucker II*, *supra*, 208 Cal.App.4th at p. 208, fn.4.)

Appellants appealed the dismissal of the class allegations. In *Tucker II*, we reversed as to the dismissal of class claims under the UCL and affirmed as to the dismissal of other class claims. (*Tucker II, supra*, 208 Cal.App.4th at p. 208.) In essence, although the UCL claims were not reasonably susceptible to class treatment to

the extent they sought *restitution*, it was not established that the UCL claims were insusceptible to classwide *injunctive* relief. (*Id*. at pp. 228–230.)

More specifically, we observed, the UCL claims did not support classwide restitution because (1) individualized inquiries were needed to determine whether members of the class were aware of and misled by respondents' wrongdoing (a rounding-up policy); and (2) even assuming there were common material misrepresentations, each class member would have to demonstrate a different amount that was wrongfully taken to obtain restitution—those who were aware of respondents' "rounding-up practice" could not be entitled to the return of any amounts paid to defendants, and some class members might not have exceeded the available minutes. (*Tucker II, supra*, 208 Cal.App.4th at pp. 228–229.) But that did not mean the "UCL claims for other equitable relief are necessarily barred." (*Id*. at p. 230.) To the contrary, we concluded: "We believe the trial court erred in sustaining the demurrer, without leave to amend, as to the [UCL causes of action] to the extent that those claims seek injunctive relief under the UCL. We cannot say, as a matter of law, that Plaintiffs cannot state a claim on this basis. [Citations.] Regardless of whether Plaintiffs are able to pursue claims for individual damages or class restitution, the adequacy of Defendants' disclosures of the contested billing practice, and whether at least some members of the public are likely to be deceived are not issues that can be resolved as a matter of law on demurrer, even with the matter judicially noticed. . . . [¶] Ultimately, it is still up to the trial court, in the exercise of its considerable discretion, to determine if Plaintiffs' UCL claims for equitable relief are appropriate for class treatment at all. [Citation.] That issue is not before us on this record and we express no opinion on it." (*Id*. at p. 230.)

B. Sixth Amended Complaint

In December 2012, appellants filed a sixth amended complaint, again alleging three claims under the UCL and seeking classwide remedies of both restitution and injunctive relief.

Although appellants had not obtained court approval to file the sixth amended complaint, the trial court allowed appellants to file a motion to obtain such leave. The

3

court denied this motion in July 2013. The court found, among other things, that the sixth amended complaint improperly sought to include claims for classwide restitution: "in apparent disregard of the Court of Appeal's holding in [*Tucker II*], Plaintiffs continue to seek restitution under the three UCL causes of action. Only after Defendants properly and vigorously objected to the inclusion of that claim have Plaintiffs acknowledged in their reply papers that the claim for relief has been foreclosed by the Court of Appeal['s] ruling. This Court agrees and will not allow revival of that claim for relief." (Italics added.) The court struck the sixth amended complaint but allowed appellants to file a further amended pleading consistent with its rulings.

    C. Seventh Amended Complaint

In August 2013, appellants filed their seventh amended complaint. As to the three UCL causes of action, appellants this time sought injunctive relief for the class (to enjoin respondents from continuing to engage in their allegedly unlawful, unfair and deceptive practices) and restitution as to Rel and Hodge only. The pleading defined the proposed class as "all consumers who have entered into a term contract of one or two years for wireless service in California from the Defendants at any time from January 1, 1999, until the present time."

The seventh amended complaint alleged, essentially, that the rate plans offered by respondents contained a material misrepresentation as to the actual number of airtime minutes that each subscriber would receive pursuant to the terms of the wireless service agreement. Because subscribers receive fewer than the specified number of minutes, subscribers are allegedly charged each month for airtime minutes they do not receive. Appellants alleged that respondents had a "uniform policy" by which they sold their plans, and that appellants and every other member of the class received and relied upon respondents' alleged misrepresentation. The seventh amended complaint referred more specifically to promotional materials from 2003 to 2011 and attached as exhibits some brochures, mailers, and website excerpts from that period.

According to the seventh amended complaint, Rel was "not a current subscriber to [respondents'] wireless telephone service" and had not been a subscriber since

4

"approximately November, 2004." Hodge initiated wireless service during the course of a telephone conversation with her landline carrier in approximately April 2004.

D. Respondents' Demurrer and Initial Motions to Strike

Respondents filed a demurrer to the seventh amended complaint and an alternative motion to strike appellants' request for UCL injunctive relief and restitution, which the court heard on November 15, 2013. The court overruled respondents' demurrer, finding that the allegations sufficiently stated UCL causes of action and appellants' standing. The court also denied respondents' motion to strike appellants' request for UCL injunctive relief and individual restitution, rejecting respondents' preemption arguments.

In addition, respondents brought a motion to strike the *class* allegations of the seventh amended complaint, which the court heard on November 15, 2013, as well. With respect to the requirement of commonality, the court ruled that respondents had not demonstrated that no UCL claim for injunctive relief could be stated as a matter of law (citing *Tucker II*). The court also rejected respondents' argument that appellants lacked standing under the UCL because they were not deceived by the rate plan brochure, finding that the seventh amended complaint more broadly alleged that appellants were "exposed to the conduct on which the class claims are based," and the "class claims challenge the representation of the actual number of available airtime minutes stated in the rate plans."

E. Respondents' New Motion to Strike Class Allegations

At some point, respondents discovered that Hodge voluntarily changed her rate plan in mid-2014 from a bucket plan to a "Mobile Share plan" with *unlimited* airtime minutes, as reflected in her billing statement. As Hodge explained in her deposition, she now had "unlimited minutes and texting" on her Mobile Share plan. Hodge acknowledged that she was not trying to change through this lawsuit the unlimited domestic airtime she now enjoyed on her Mobile Share plan; nor was she seeking on behalf of the putative class anything beyond "damages" and a "confession" by respondents.

5

Respondents thereafter filed a new motion to strike the class claims for UCL injunctive relief in the seventh amended complaint—the motion at the heart of this appeal—on two grounds:  (1) because the pleadings and Hodge's deposition testimony showed that appellants were *former* subscribers to a bucket plan, neither had ongoing injury and could not obtain injunctive relief for themselves, so they could not represent a putative class seeking only that relief; and (2) there was no longer any ongoing marketing of "bucket plans," so the class claims seeking injunctive relief were moot.

As to the latter point, respondents produced evidence that, as of the time of the filing of the seventh amended complaint, respondents were no longer requiring all customers to select a "bucket plan" with limited airtime minutes.  According to the declaration of Roberta Capodicasa (lead product marketing manager for respondent Cingular Wireless LLC, n/k/a AT&T Mobility LLC (AT&T)), AT&T introduced Mobile Share plans in August 2012, offering new and existing mobile customers the option of unlimited airtime for domestic voice calls, along with unlimited text messaging.  AT&T was no longer marketing "bucket plans" to new customers; in October 2013, AT&T announced it would offer new and prospective customers only Mobile Share plans with unlimited domestic airtime.

In addition, respondents urged that appellants' interrogatory responses showed that, despite more than a decade of litigation, appellants still could not identify the injunctive relief they were seeking.

F.  Appellants' Opposition to Motion to Strike Class Allegations

Appellants did not present evidence contradicting respondents' showing regarding the marketing of Mobile Share plans, or Hodge's switch to such a plan in mid-2014.  In fact, they acknowledged that appellants "no longer have rate plans with defendants that provide a bucket of airtime minutes."  They argued, however, that appellants could nonetheless represent the class because, as the trial court had previously ruled in denying an earlier motion to strike the class allegations from the seventh amended complaint, the allegations were sufficient for purposes of UCL standing.  UCL standing, they maintained, is not the same as eligibility for injunctive relief.  Appellants further argued

6

that injunctive relief was not moot. And they also pointed out that, if appellants were deemed to lack standing to represent the class, there would likely be insufficient time before the running of the five-year statute (Code Civ. Proc. § 583.310) to add a new plaintiff who had such standing.

G. Appellants' Counter-Motion to Reinstate Restitution Class Claims

During the pendency of respondents' motion to strike the class allegations, appellants also filed a motion for leave to file an eighth amended complaint. In their proposed eighth amended complaint, they once again sought class remedies of restitution (despite the discussion in *Tucker II* and the court's earlier ruling) as well as injunctive relief.

H. Orders Granting Motion to Strike and Denying Leave to Amend

Respondents' motion to strike the class claims and appellants' motion for leave to file an eighth amended complaint were heard in January 2015. At the hearing, appellants took a new position: rather than contend there was not enough time to locate a new plaintiff, they argued there was enough time, claiming that the *Tucker II* decision triggered Code of Civil Procedure section 583.320, subdivision (a)(3), extending by three years the time to commence trial. Thus, appellants claimed, there remained three years from December 12, 2012 (the stipulated five-year deadline after taking tolling into account)—in other words, until December 12, 2015—to bring the matter to trial.

By orders filed on February 3, 2015, the trial court granted respondents' motion to strike and denied appellants' motion for leave to amend.

1. Order Striking Class Allegations

The trial court noted that the seventh amended complaint limited the class claims to the request for classwide injunctive relief under the UCL causes of action. Indeed, the court ruled, a request for classwide restitutionary relief under the UCL was foreclosed by *Tucker II*. Although respondents had not "demonstrated the class claims are moot," they had demonstrated that appellants lacked "standing to seek injunctive relief and, thus, cannot serve as class representatives." The court reasoned that, to have standing to bring a claim for injunctive relief, the plaintiff must be personally threatened by the defendants'

7

allegedly unfair business practices. Because Rel was not a customer since 2004 and Hodge was no longer on a bucket plan, and new and prospective customers are only offered unlimited plans, neither plaintiff was at risk of ongoing harm and therefore lacked standing to seek individual or class-wide injunctive relief. Thus, the court concluded, since appellants "are not entitled to injunctive relief, they are not members of the class they seek to represent and cannot adequately represent that class." (Citing *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 631–632 (*Pfizer*).)

In addition, the court found that precertification discovery to ascertain a suitable class representative was improper under a balancing test weighing the actual or potential abuse of the class action procedure against the potential benefits that might be gained. (Citing *Starbucks Corp. v. Superior Court* (2011) 194 Cal.App.4th 820, 825.) The court cited, among other things, the approaching five-year deadline, the number of amendments already allowed, and the fact that appellants had already had the opportunity to engage in class discovery for the vast majority of the action, yet never sought a judicial determination on class certification.

### 2. Order Denying Leave to File Eighth Amended Complaint

In denying appellants' motion for leave to amend to state class claims for restitution, the court asserted that class-wide restitutionary relief under the UCL is foreclosed by *Tucker II* and plaintiffs had acknowledged as much, and the filing of the new pleading would be prejudicial in light of the rapidly approaching expiration of the five-year statutory deadline.

### I. Appellants' Appeal

Appellants appealed both the order granting respondents' motion to strike the class allegations and the order denying their motion for leave to file an eighth amended complaint.

Respondents moved to dismiss the portion of the appeal challenging the order denying leave to filed an eighth amended complaint, because that order was not appealable as of right. We granted the motion on May 13, 2015, and ruled: "we will

8

consider only whether the trial court erred by granting respondents' motion to strike the class allegations of the seventh amended complaint."

## II.  DISCUSSION

### A.  Order Granting Respondents' Motion to Strike[2]

As mentioned, the trial court struck the class allegations from the seventh amended complaint because appellants did not have standing to pursue class claims for UCL injunctive relief.  We conclude the court erred in striking the class allegations based on standing, and the record does not support an affirmance of the order on any other ground asserted by respondents.

### 1.  Appellants' Standing

The parties do not dispute that appellants, personally, cannot obtain injunctive relief.  Injunctive relief is a prospective remedy intended primarily to prevent ongoing or imminent future harm.  (See *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 233 & fn.5; *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 928.) Appellants no longer face such harm from respondents' alleged wrongdoing.

The question, however, is whether appellants' ineligibility for injunctive relief means they have no standing to pursue the class UCL claims in this case.  Respondents urge, and the trial court concluded, that it does.  But they are incorrect:  whether a plaintiff may obtain a particular type of *relief*—such as restitution or an injunction—does not dictate whether a plaintiff lacks *standing* to assert the underlying cause of action. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 335–337 (*Kwikset*) [standing under § 17204 is not dependent on whether or not the named plaintiff can demonstrate his or her entitlement to the remedy of restitution]; *Clayworth v. Pfizer, Inc.*

---

[2]    Respondents brought their motion to strike the class allegations based on evidence outside the pleadings, pursuant to *In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298 [motion to strike class allegations under Cal. Rules of Court, rule 3.767, based on evidence outside the pleadings, was not an attack on the pleadings like a traditional motion to strike, but a request to initiate the class certification process].)

9

(2010) 49 Cal.4th 758, 789–790 [noting the distinction between "the issue of standing" and "the issue of the remedies to which a party may be entitled"].)

To have standing to represent a putative class, the named plaintiff must be a member of the class he or she purports to represent. (*First American Title Ins. Comp. v. Superior Court* (2007) 146 Cal.App.4th 1564, 1573 (*First American*).) In the context of UCL claims, an individual may bring a class action only if he or she is a member of the class injured by the wrongful act. (Bus. & Prof. Code, § 17204; *First American, supra*, 146 Cal.App.4th at pp. 1573–1574.)[3]

Here, the causes of action asserted on behalf of the class are alleged under the UCL. A plaintiff has standing to bring a UCL claim if the plaintiff "suffered injury in fact and has lost money or property as a result of" the defendant's wrongdoing. (Bus. & Prof. Code, § 17204; see *Kwikset, supra*, 51 Cal.4th at pp. 320–327.) Rel and Hodge were allegedly induced by respondents' misrepresentation and received less than the amount of airtime minutes they were led to believe they were purchasing, during the time (within the class period) they had a bucket account. Appellants have therefore allegedly suffered injury in fact and lost money as a result of respondents' practices, and they have standing to assert the UCL causes of action in the seventh amended complaint. As long as other requisites for class actions are met, they may assert the UCL claim on behalf of others. (§ 17204; see § 17203 ["Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure."].)[4]

---

[3]     Unless otherwise indicated, all statutory references hereafter are to the Business and Professions Code.

[4]     Code of Civil Procedure section 382 authorizes class actions for questions of common interest where the parties are numerous and individual lawsuits are impracticable. The party seeking class certification must establish that the class is ascertainable and there is a well-defined community of interest among the class members, demonstrated by (1) predominant common questions of law or fact; (2) class representatives with claims or defenses *typical* of the class; and (3) class representatives who can *adequately represent* the class. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 313; *Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1500–1501 (*Seastrom*).)

Respondents argue that multiple cases, including those cited by the trial court, reject putative class allegations on the ground that the named plaintiff lacked standing to pursue the claims asserted on behalf of the putative class. In those cases, however, the putative class representative lacked standing because he or she was not a member of the class and could not bring the *cause of action* that had been asserted on the class's behalf. (E.g., *Parker v. Bowron* (1953) 40 Cal.2d 344, 352–353 [treasurer of a trade union, who was not a city employee, was not entitled to represent a class of city employees because he was not a member of the class]; *Pfizer Inc.,* 182 Cal.App.4th at pp. 632–634 [plaintiff, who could not assert an individual UCL claim because he did not rely on the alleged misrepresentation, lacked standing to represent a class asserting UCL claims based on that misrepresentation]; *First American, supra,* 146 Cal.App.4th at p. 1574 [plaintiff lacked standing to represent a class alleging improper kickbacks to title insurers from lenders, where plaintiff conceded he was not, and never had been, a member of the class he proposed in his complaint, since no improper kickbacks were directly connected to his purchase of title insurance]; *Petherbridge v. Altadena Federal Savings & Loan Association* (1974) 37 Cal.App.3d 193, 195–203 [plaintiff lacked standing to represent a class seeking damages from loan companies for misuse of impound funds paid by their borrowers, because she was not a member of the class: she was a borrower from only one of the defendants, there was no fiduciary or trust relationship between the plaintiff and the other defendants, and she failed to provide sufficient evidence of a conspiracy among the defendants]; *Payne v. United California Bank* (1972) 23 Cal.App.3d 850, 859

---

The trial court did not base its decision to strike the class allegations on a lack of *typicality*, and respondents assert that typicality is not relevant to this court's review. The *adequacy of representation* may not exist if there are conflicts of interest between the representatives and other class members (*Seastrom, supra,* 149 Cal.App.4th at p. 1502), but the trial court did not find that appellants were unsuitable representatives on this basis, and respondents asserted in the trial court that the ground for their motion to strike was "*not* that [appellants] have conflicts with class members or their counsel will not adequately represent any class." (Italics added.) We therefore need not and do not consider whether appellants may or may not be sufficient representatives for purposes of class certification in these respects.

[plaintiffs lacked standing to represent a class of purchasers of vacuum cleaners against the seller of the vacuum cleaners and its financier, where the financier had not financed plaintiffs' purchases; the "question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant"]; *Greater Westchester Homeowners' Assn., Inc. v. City of Los Angeles* (1970) 13 Cal.App.3d 523, 526 [plaintiff lacked standing to sue where complaint did not allege facts showing the plaintiff was a member of the class consisting of homeowners damaged by aircraft flights authorized by defendant].)

Respondents cite no case holding that a plaintiff with a viable cause of action is not a member of a class, or lacks standing to represent a class, merely because he or she cannot individually obtain the type of remedy other class members are seeking.

The trial court's conclusion that appellants are not members of the putative class is accordingly incorrect. The seventh amended complaint sets forth the class as "all consumers who have entered into a term contract of one or two years for wireless service in California from the Defendants at any time from January 1, 1999, until the present time." Appellants fall within this definition, since Rel was a subscriber until 2004 and Hodge became a subscriber in 2004. Moreover, appellants allegedly suffered economic harm caused by the wrongdoing alleged in the class UCL claims.[5]

The trial court erred in striking the class allegations from the seventh amended complaint on the ground that appellants lack standing to bring the representative claims.

### 2. Class Request for Injunctive Relief is Not Moot

As an alternative ground for requesting that the class allegations be stricken, respondents argued that, by the time the seventh amended complaint was filed, there was

---

[5] Respondents argue that appellants "conceded that persons with unlimited airtime are not members of the proposed class," citing paragraph nine of the declaration of appellants' counsel, which reads: "Obviously, persons who purchased unlimited airtime rate plans are not members of the Plaintiff Class, and never have been." When read in context, however, the reference is clearly to those persons who were *never* subscribers to a bucket plan, not to those who, like Rel and Hodge, were subscribers at some time during the class period.

no longer any requirement that subscribers have a bucket plan and, in fact, bucket plans were no longer being marketed. Accordingly, respondents urged, the request for injunctive relief on a classwide basis was moot. The trial court did not agree, and neither do we.

Capodicasa's declaration states that AT&T began *offering* Mobile Share Plans (with unlimited airtime for domestic voice calls) to new and existing postpaid wireless customers in August 2012. As of August 2012, new and existing postpaid customers could *choose* between traditional monthly wireless service plans with a specified number of minutes and Mobile Share Plans. Existing postpaid customers may *elect* to switch to a Mobile Share Value Plan without penalty. As to *new* customers, in October 2013 respondents stopped promoting traditional wireless plans with a specified number of airtime minutes, and respondents currently offer only the Mobile Share Value Plans to *new and prospective* customers.

Thus, while there is evidence that AT&T no longer markets bucket plans to new and prospective customers, and existing customers could switch from their bucket plan to an unlimited plan, the evidence does not preclude the possibility that there are still subscribers to a bucket plan. It may even be construed that, although respondents do not market bucket plans to new and prospective customers, respondents continue to sell or market bucket plans to *existing* customers.

There may be nothing to enjoin with respect to the marketing of bucket plans, to the extent respondents no longer market them. But because the record does not establish that there are no longer *any* bucket plans, or that no one in the putative class still has a bucket plan, injunctive relief could still be fashioned on behalf of relevant class members under the terms of the seventh amended complaint, which alleges that the class seeks to enjoin respondents' unlawful, deceptive and unfair business practices. As appellants argue, there are a variety of injunctive remedies a trial court could conceivably impose: for example, requiring respondents, from now on, to provide to each class member the number of usable minutes stated in the class member's individual rate plans; or prohibiting respondents from overcharging class members with respect to their individual

rate plans.  (see § 17203; See generally *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy* (1992) 4 Cal.App.4th 963, 972–973.)  We do not opine whether such remedies would be appropriate or even properly subject to classwide relief; but the record before us does not preclude it, and therefore the request for injunctive relief has not been proven to be moot.

The record discloses no support for the court's order striking the class allegations, and the order must be reversed.

B.  Other Issues

Because we conclude that Rel and Hodge do not lack standing under the UCL to assert claims on behalf of the class, and we reverse the order striking the class allegations from the seventh amended complaint on this ground, we need not and do not address the other aspect of the order that denied appellants' request for precertification discovery aimed at finding other class representatives.

Nor do we address the other order from which appellants appealed—the order denying leave to file an eighth amended complaint.  As we ruled in our order of May 13, 2015, we will consider only "whether the trial court erred by granting respondents' motion to strike the class allegations of the seventh amended complaint."

Finally, we need not and do not address appellants' contention that they are entitled to pursue classwide restitution as a remedy, notwithstanding any language to the contrary in *Tucker II*.  Essentially, appellants argue that our discussion of the availability of restitution as a classwide remedy in *Tucker II* was dictum, and classwide restitution is appropriate in this case.

The issue is not properly before us because, as stated in our order on May 13, 2015, the only question in this appeal is whether the trial court erred by granting the motion to strike.  Appellants do not explain how their renewed plea for classwide restitution pertains to that question, which turns on the issue of appellants' standing.

14

Moreover, whether or not *Tucker II* bars a class restitution remedy, the operative pleading—the seventh amended complaint—does not even *request* classwide restitution.[6]

### III.  DISPOSITION

The order striking the class allegations from the seventh amended complaint is reversed.  Appellants shall recover their costs on appeal from respondents.

---

[6]  Respondents filed a motion for sanctions against appellants' counsel on September 30, 2015, contending counsel violated rule 8.276 of the California Rules of Court and this court's order of May 13, 2015, by arguing in appellants' opening brief that appellants were entitled to assert claims for classwide restitution.  We deny the motion for sanctions.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.